## No. 8870.

### Mrs. C. Honold vs. Victor Meyer et als.

Plaintiff owned certain corporation stock, which stood on the books of the corporation in her name and for which she held a certificate also in her own name. She gave a power of attorney to an agent to *sell* and transfer the stock. The agent fraudulently *pledged* the stock in favor of defendants, to secure the debt of a commercial firm of which he was a member. The pledge was effected by means of a *transfer* to defendants on the books of the company, made by virtue of the power of attorney, and a certificate was issued in the name of defendants. Defendants had no knowledge of the fact that the stock belonged to plaintiff. They accepted the transfer on the faith of the certificate issued in their own name. *Held*, that they were not bound to enquire into plaintiff's title, and that the latter cannot recove r.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*T. J. Semmes & Payne* and *Henry Denis* for Plaintiff and Appellant.

1. An agent authorized to sell cannot pledge his principal's property, to secure his own debt. Story, Agency, §§ 78, 225, 228; Kent, 2 vol. p. 626, *et seq.;* Wharton, Agency, pp. 193, 745, *et seq.;* C. C. 3145; 25 A. 313; 19 A. 368; 19 A. 300; 10 A. 70, and cases cited.

2. The maxim : *En fait de meubles la possession vaut titre*, is no part of the law of Louisiana. It was unknown to the Roman law. Troplong, Prescription, vol. 2, pp. 556 and 560; Duranton, vol. 15, § 385. It was introduced in the Napoleon Code, as the heading of Article 2279. In adopting Article 2279 of N. C., we rejected in Lousiana *its heading*. See Code of 1808, p. 488, Articles 75 and 76; Code of 1825, Arts. 3506–7. In Louisiana the right of revendication of movables from a *bona fide* purchaser, is well established . 9 Rob. 525; 10 Rob. 55; 11 Rob. 16; C. C. 2452; Stern Bros. vs. Bank, 34 A 1119, and cases cited.

3. An exception to the rule is when the true owner has put on his agent the *indicia* of ownership. 6 A. 7, 313, 516; 5 A. 73, and cases cited. The owner of stock of a corporation does not put on his agent the *inditcia* of ownership, if he does ;not transfer the stock to him or assign his certificate to said agent, or in blank. Such owner does not exhibit his agent to the world as the *apparent owner*, by simply giving him a power of attorney to sell. 74 N. Y. 226; 46 N. Y. 325; 49 N. Y. 289; Moores vs. Citizens' Bank of Piqua, just decided by United States Supreme Court.

4. A pledgee cannot prescribe. C. C. 3175. Prescription of movables, only applies to cor-. poreal movables and obligations to bearer. Marcadé, Prescription, p. 254; Laurent, vol. 33, p. 580; Troplong, Prescription, vol. 2, p. 583. Prescription suspended in favor of the wife when action prejudicial to husband. C. C. 3525; 2 A. 756, 834; 34 A. 822.

*Julius Aroni, B. F. Jonas* and *Breaux & Hall* for Defendants and Appellees.

1. One who has conferred upon another, by a written transfer, all the *indicia* of ownership of property, is estopped to assert title to it, as against a third person who has in good faith acquired for value, from the apparent owner. Dos Passos, p. 601, and note; McNeil vs. Tenth Nat. Bank, 46 N. Y. 325; Moore vs. Metropolitan National Bank, 55 N. Y. 46; Berwick vs. Marye, 9 Nev. 312.

2. Stock assigned as security of a negotiable note, transferred before maturity, is taken by the assignee free from all equities, on the ground that the security partakes of the

nature of the debt. Dos Passos, Stock Exchanges, p. 578: Kennicot vs. The Supervisors, 16 Wallace, 464; Carpenter vs. Logan, 16 Wallace, 275; Bateville Institute vs. Kaufman, 18 Wallace, 153; 9 Wisconsin, 504-511.

3. The power to sell includes the power to pledge. Clark & Brisbin vs Bouvain, 20 A. 71.; Davidson & Hill vs. Bodley, 27 A. 150.

4. Pledge may be made legally under form of sale. Wolf vs. Wolf, 12 A. 531, and authorities cited.

The opinion of the Court was delivered by

TODD, J. This is an action on the part of the plaintiff to recover of the defendants one hundred shares of stock of the St. Charles Railroad Company, or its value, and dividends on the same.

The defense made to the action is substantially, that the shares in question were transferred on the books of the company, for a valuable consideration, to Meyer, Weis & Co., the defendants, then composing said firm, who received the certificate of stock therefor, in the regular course of business, without knowledge that plaintiff had any interest therein, and it was not incumbent upon them to find out, touching such interest.

They further say that the said certificate of stock was issued to them for the protection of Baring Brothers & Co., of England, and was, immediately upon its receipt, turned over to the agents of said firm in New Orleans, who accounted for the same; that the stock had long since been sold to other parties, and defendants were unable to say who were now the owners of it. They further allege that the transfer of the stock to them was made by a party fully authorized by plaintiff to make it, and that the certificate having been issued and received in the usual and regular way, their title thereto was perfect. The demand was resisted on other grounds unnecessary here to mention.

From a judgment in favor of the defendants the plaintiff has appealed.

The facts bearing on the controversy are briefly these:

There was a commercial partnership engaged in business in the city of New Orleans during the years 1877 and 1878, under the style of Honold & Co., composed of the husband and the son of the plaintiff. The son held a power of attorney from the plaintiff to sell the stock of the St. Charles Railroad Company, which plaintiff owned at the time and which stood in her name on the books of the company, being the stock which forms the matter in dispute in this case, and said power of attorney contained full authority to transfer the stock.

This agent did make a transfer on the books of the company of the stock in question to Meyer, Weis & Co., the defendants' firm at the time, and a certificate for said stock was thereupon issued by the company to said firm.

The validity of this transfer is denied by the plaintiff, on the grounds, substantially, that the transfer in question was really a pledge of the stock for the debts of Honold & Co., and the agent had no power to pledge the same for his own or his firm's debt, and that this property of the plaintiff could not be used to pay her husband's debts or that of the firm of which he was a member.

It is undoubtedly true that this transfer was made to secure a contingent liability of Honold & Co., which it is unnecessary to explain; and there is no evidence to show that it was with the knowledge and consent of the plaintiff.

It is just as true, however, that Meyer, Weis & Co. had no knowledge at the time of the transfer of plaintiff's interest in the stock; that the first and only information they had of their title to the stock was furnished by the certificate issued to them by the company after the transfer had been made to them on its books, conveyed in a letter to them from Honold & Co., stating the purposes of the transfer; that Meyer, Weis & Co. accepted the transfer and gave a valuable consideration for the stock, and that it went into the hands of other parties immediately thereafter and was subsequently sold, in furtherance of the purposes for which the transfer was made.

Under this state of facts, the important question arises whether the plaintiff is entitled to recover of the defendant this stock, or its value.

A mature consideration of the question in all its bearings, and an exhaustive examination of the authorities bearing on it, lead us to the conclusion that she is not entitled to recover.

It is true that plaintiff was the undisputed owner of the stock, and the same stood in her name on the books of the company. It is also true that she had given to her agent no authority either to sell or pledge it for his own debts or those of his firm, and there can be no doubt that if Meyer, Weis & Co. had received this stock directly from the hands of the agent, after being made acquainted with plaintiff's ownership of the same, and after an inspection of the agent's authority or power of attorney in the premises, and of the actual consideration for which it was received, they could have acquired no right to the stock that could prevail against plaintiff's claim thereto.

For in such case defendants would have been apprised of plaintiff's ownership of the stock and the want of authority in the agent to dispose of it for the purposes proposed. Just as little would they have been protected if they had acquired it from the agent directly, in the absence of any authority to sell, relying on his possession of the stock.

Such, however, was not the case. Meyer, Weis & Co. did not acquire the stock, and the evidence of their title thereto, solely and directly by the act of this agent, and immediately from him. There was another agent or intermediary in the affair, forming an important factor therein and whose participation in the matter exercises a controling influence upon the legal result and the conclusion to which we have arrived.

We refer to the company itself. It was the depositary, custodian and guardian of the plaintiff's stock, and as such an agent of the plaintiff, without whose consent and co-operation the transfer in question could not have been effected.

To the company the agent and son of the plaintiff submitted a power of attorney from his principal, giving him full authority to sell and make a transfer of the stock. On the faith of that authority the transfer was permitted and recognized as valid by the company, and on the faith of the transfer thus made by due authority the company, as in duty bound, issued a certificate for the stock to the transferees, Meyer, Weis & Co., thereby and therein declaring them to be the owners of the stock. No possible blame could attach to the company for its acts in the premises. The plaintiff's counsel admit this, when, in their brief, they say (quoting):

"Upon the simple inspection of his power of attorney, the company was bound to permit the transfer on its books, and as a consequence thereof to issue a certificate to the transferee."

How then can we impute any fault or negligence to the defendants for acting on the faith of a transfer made by due authority, and of a certificate issued in compliance with a legal requirement, recognizing the transfer as made by competent authority and as conveying the ownership of the stock to the transferees? We do not think they were in fault, and they were justified in believing they were the lawful holders of the stock and acting on that belief. The fault is to be found for the loss incurred by plaintiff not in the company, nor in Meyer, Weis & Co., but in the agent selected by her and charged with the responsible trust of disposing of the property. In truth, the whole question would seem to resolve itself into this: whether the loss should fall on

Meyer, Weis & Co., innocent parties in the transaction, as we have shown, and who gave their money or credit for the stock, rather than on the plaintiff, when it is evident that the loss was caused by the act of an unfaithful agent, chosen by her, and who used the power with which he was entrusted for his own personal gain. We think there could be but one answer to this, an answer supported by the highest legal authority and elementary in principle. Thus we read in Smith's Mercantile Law, p. 158:

"He who accredits another by employing him, must abide by effects of that credit, and will be bound by contracts made with innocent third persons in the seeming course of that employment, and on the faith of that credit, whether the employer intended to authorize him or not, since where one of two innocent persons must suffer by the fraud of a third, he who enabled that third person to commit the fraud should be the sufferer."

And we are further supported in the conclusion we have reached touching the rights of the defendants under the transfer and the certificate for the stock issued by the company after such transfer, by several adjudications in cases bearing a striking analogy to the instant one.

Thus, Chief Justice Taney, in deciding the case of Lowery vs. Bank of Baltimore, says:

"The party to whom it is transferred rarely, if ever, sees the entry, and relies altogether upon the certificate of the proper officer of the bank, stating that he is entitled to so many shares, that is to say, so many shares have been transferred to him by one who had a lawful right to make the transfer."

He then refers to the case of Davis vs. Bank of England, above cited, and goes on to say: "And as it (the transferee bank of the stock) paid a valuable consideration, and had no notice, actual or constructive, of any violation of trust, upon which the transfer could be imperiled in equity, it had a right to sell the stock for the payment of the note for which it was pledged and to make the purchasers a valid title. A different rule would render the right of every purchaser of stock in a bank insecure or liable to doubt, and greatly impair its value, and would, moreover, seriously disturb the usages of trade and the established order of business in relation to this subject, in a manner highly injurious to the community; for purchasers always rely on the certificate of the bank in which it is held as conclusive evidence of the ownership. Most commonly, the purchase is made through a broker, and the buyer does not know who is the seller and who makes the transfer; the certificate

of the bank tells him that he is entitled to so many shares, and he pays his money upon receiving the certificate, without further inquiry. It would be unjust and inequitable to charge the stock in his hands with any equitable encumbrance or trust, however created, which was not known to him at the time he paid his money."

(See, also: Davis vs. Bank of England, 2 Bingham, 393; 9th' Eng. Com. Law R. 451; Hulbrook vs. Zinc Co. 57 N. Y. 616; Salisbury Mills vs. Townsend, 109 Mass. 111; National Bank vs. Watsontown Bank, 105 U. S. (15 Otto) 217.)

We have examined the authorities cited by the plaintiff's counsel, and the examination has satisfied us that they are not opposed to the doctrine above announced. They refer mainly to cases when the purchases of the stock or other like property were made from persons not the owners and having no authority to sell, and when the buyers acted on the faith of the possession alone of the sellers. This Court has held in the case of Stern Bros. vs. Germania Bank, 34 A. 1119—a case also cited by the plaintiff's counsel as supporting her pretensions—that under such circumstances the purchaser would not be protected as against the true owner; but the principle announced in that and other similar cases has no direct bearing on the instant one.

For these reasons the judgment of the lower court is affirmed, with costs.

---

### DISSENTING OPINION.

BERMUDEZ, C. J.   The dual question presented in this case is simply:

*Whether* the agent of a married woman can concoct with her husband, who, with him, forms a commercial partnership, so as, without her knowledge or consent, under a power to *sell, pledge* stock belonging to her, in favor of a creditor of theirs, as security of their indebtedness to him; and, *whether* such creditor is or not bound, before accepting the pledge, to inquire into the right of the pledgeor, or transferror, to dispose of it as a pledge under the guise of a transfer.

The evidence leaves no doubt that the certificate of stock in the name of defendant was not designed to vest a title of ownership, but merely to stand as a pledge. It also shows that the agent of the plaintiff had no power to pledge the stock, although he had that of selling it.

It is impossible not to answer the *first* inquiry in the negative, and the *second* in the affirmative.

It is elementary that an agent has no right to give the property of his principal in payment of his individual indebtedness. It is likewise

rudimentary that a husband cannot take the property of his wife and use it in extinction of his debts.

It is likewise undeniable that an agent vested with the power to *sell*, has no authority to *pledge* or *mortgage*. Our law requires two distinct powers to be specially conferred. The power to *sell* does not imply that to *encumber*.

Those propositions do not seem to be denied or even questioned; but it is contended that a third innocent party is not to be made the victim of a faithless agent and of a dishonest husband, under such circumstances, unless knowledge be charged against and proved upon him.

Knowledge is actual or constructive. In instances like the present one, actual knowledge, as a rule, cannot be proved. It suffices if constructive knowledge is shown; that is, knowledge which should and could, and has not been, procured.

It may be that, as regards movables, purchasers as a rule, are not bound to inquire into the title of the vendors, although the law has provided that the true owners may in some specified cases, recover them even from an innocent purchaser. If such be the law, it is only such in cases in which the particular effect is one which can be owned without a written title. It surely is not the law, where the effect is one which cannot be owned without such title.

Of that class are shares or stock of a corporation. No one can be a shareholder, or stock owner, of a corporation like that mentioned in this controversy, unless his title to the shares or stock be evidenced *both* by the books of the corporation and by the certificate which issues to him, *in writing*.

No one is relieved from the obligation of knowing who is vendor, who his transferror is, and what the title is to the thing sold or transferred, unless at his risk and peril. The regularity of the transfer on the books of the corporation and the exoneration of the company from all responsibility, do not dispense him from the duty of instituting the inquiry.

Companies may be liable for issuing certificates to innocent parties, where the transfer is made by one having no authority to effect it. Such innocent parties may be satisfied with the validity of the transfer because of the warranty of the company; but it by no means follows that, where the corporation is in no way in fault, such parties should not have ascertained who their vendor or transferror was.

When the certificate of stock in question was handed by one of the firm, or by both members of the firm, to the defendants, no considera-

tion actually passed for it.   It was a simulated transfer, designed solely
to secure a pre-existing indebtedness of the firm to the defendants; and
the latter necessarily, unquestionably knew it, for they subsequently
sold the stock by direction of the firm debtor, applying the proceeds to
the extinction of the debt and passing same to the credit of their
debtor.   They had no reason to suppose that the firm owned the stock.
They should have inquired; and had they done so, they would have
ascertained, by a simple inspection of the transfer, that it had been
made by an agent of the property of his principal to secure an individ-
ual creditor of himself and firm.

Suppose, for a moment, that if the property transferred, instead of
being, as it was, *stock*, had been real estate; that plaintiff's agent had
handed to defendants an authentic certificate from a notary or the con-
veyance officer, showing the same to be in their name; and suppose the
plaintiff had subsequently revendicated the land, could she have been
defeated on the ground that the defendants were in good faith and not
bound to examine or inquire into the title?   Surely not.   No difference
between the two cases is discernible, as in both the title must be evi-
denced *in writing*, and the right to transfer, in like form.

Conceding that both the plaintiff and the defendants are innocent, it
is evident that either the former or the latter is to bear the loss.  Which
of them should sustain it?

The rule of law is, that whenever one of two innocent persons is to
support a loss, that one should incur it who could more easily have
avoided it and who did not do so.

What is it that the plaintiff could have done and has not done?
What is it that the defendants could have done and have not done?

The plaintiff could do no more than she has.   The defendants could
with perfect ease have inquired, as they should have done, into the title
of their transferror.   Had they done so, they never would have accept-
ed the transfer to them of plaintiff's stock; but it must be acknowl-
edged that they had nothing to make by the inquiry, that they had
everything to gain by omitting it, for they had the company as a war-
rantor, and therefore it is that they rested in perfect tranquillity and
security.

It is clear to my mind that in law and equity the plaintiff should
recover.

I, therefore, think that the judgment should be reversed.

## ON APPLICATION FOR REHEARING.

FENNER, J.   Further argument and consideration have only served to confirm our conviction of the correctness of our original opinion.

The transfer of the stock on the books of the corporation, upon surrender of the old certificate, by an agent of plaintiff fully authorized to transfer the stock, and the issuance of the new certificate by the company to the transferee, who had no notice, express or implied, of any fraud or irregularity, and who in good faith incurred liability upon the strength of the title to the stock thus evidenced, operate together as an impregnable protection to defendants against any claim on the part of the plaintiff.

The transfer of this stock by an agent of plaintiff expressly authorized to transfer, was, under the elementary principles of the law of mandate, the entire equivalent of a transfer by the plaintiff herself, and she has no more right to question the title of the transferee than if she had personally executed the transfer.

It was the corporation which was charged with the duty of determining whether the transfer was authorized or not.   If it permitted an unauthorized transfer, it remained liable to the plaintiff for her stock or its value, and would have been equally bound to hold harmless the innocent holder for value of the new certificate.   If the transfer was authorized, then the corporation and the holder of the new certificate are alike protected.

It does seem superfluous to point out the difference between this case and that of Stern Bros. vs. Germania Bank, 34 A. 1119, since they have no conceivable resemblance.   The agent in that case was absolutely without authority to transfer or divest in any manner the title of his principal to the property which he assumed to pledge for his own debt. Another case relied on is that of Moores vs. Citizens' Bank, recently decided by the Supreme Court of the United States, but it has no application here.   That was a case where the cashier and transfer agent of a bank had fraudulently issued a certificate of stock to his sister, falsely representing to her that it was a transfer of stock held by himself in the bank, and upon the faith of the certificate had borrowed money from her.   He held no stock, transferred none on the books of the bank and surrendered no certificate, which under the by laws of the bank and under the very terms of the certificate issued to the party, were conditions precedent to valid transfer and to the issuance of the new certificate.

38

The Court said: "She relied on his personal representations, as the party with whom she was dealing, that he had such stock; and she trusted him as her agent to see the proper transfer thereof made on the books of the bank. Having distinct notice that the surrender and transfer of a former certificate were pre-requisites to the lawful issue of a new one, and having accepted a certificate that she owned stock without taking any steps to assure herself that the legal pre-requisites to the validity of her certificate, which were to be fulfilled by the former owner and not by the bank, had been complied with, she does not, as against the bank, stand in the position of one who receives a certificate of stock from the proper officers without notice of any facts impairing its validity."

To deprive the case of any application to the one in hand, it is sufficient to say that "all the pre-requisites to the validity of the certificate" had here been complied with. The stock *did* exist; it *had* been transferred on the books of the bank; the old certificate *had* been surrendered; and, therefore, the defendant here *did* "stand in the position of one who receives a certificate of stock from the proper officers without notice of any facts impairing its validity." What that position is, the opinion of the Court in the case referred to sufficiently indicates, and is there formulated in the following general proposition: "A certificate of stock in a corporation, under the corporate seal and signed by the officers authorized to issue certificates, estops the corporation to deny its validity, as against one who takes it for value and with no knowledge or notice of any fact tending to show that it has been irregularly issued." As it thus estops the corporation, so it estops the former holder of the stock, under whose authority the corporation acted in issuing the certificate.

It is, therefore, ordered that our former decree herein remain undisturbed.

---

## DISSENTING OPINION.

POCHÉ, J. A second examination of this case, and an exhaustive consideration of the authorities submitted to us on rehearing, and which had not been considered on the first hearing, have led me to the conclusion that there was error in our first opinion.

It is conceded on all sides that the stock in question was the undisputed and lawful property of plaintiff, and it is not contested that she could not be deprived of her property without her consent, or without some act of negligence on her part.

It is in full proof that she acquired the first knowledge of the unlawful disposition of her stock only a short time previous to the institution of this suit for its recovery or its value. Hence she cannot be charged, and it is not even averred, that she has ratified by acquiescence or long silence, preceded by knowledge, the act of her agent in the premises.

The crucial test of the controversy is, therefore, to ascertain whether she is legally bound by the transaction through which her stock was disposed of.

1. The first inquiry must be directed to a proper construction of the contract between the defendants and Honold & Co., under which her shares of stock went into the possession of the defendants, who subsequently sold the same, and accounted for the proceeds to their debtors, Honold & Co.

Although the transaction, by its terms, purports to be a transfer of the ownership of the stock, it is manifest from defendants' own pleadings and from the whole record, that it was not a sale; that it vested no ownership in the defendants as ostensible transferees, and that it was purely and simply an act of pledge, under the guise of an apparent transfer.

It is not even alleged or pretended that the defendants paid any money, or gave any consideration for the transfer at the time that it was made. The consideration was avowedly an antecedent debt, originating from the defendants' purchase of Honold & Co.'s drafts, and the subsequent refusal of the same by the drawees. In their letters to Honold & Co., the defendants in accepting the pretended transfer of the stock, used the following language:

"We note that you have transferred to us, on the books of the company, one hundred shares of stock of the St. Charles Street Railroad Company, certificate of which stock you had deposited with us as collateral security to cover margin on the consignment; any dividends which may become payable on said stock, whilst in our possession, to be paid to us and and placed to your credit in the transaction."

In his testimony on the trial of this case, one of the defendants stated: " We placed the dividends which we collected on the St. Charles Street Railroad stock to their credit." (Honold! & Co.) "The last being received by us in May, 1878." * * * " That stock was, in May, 1878, sold by us through our brokers for a price higher than limited by Honold & Co. and the proceeds placed to their credit. Honold & Co. were duly notified of the sale and were satisfied and ratified it."

It is, therefore, too plain for argument that defendants' possession of the stock was not that of owners, but that of pledgees, not for the debt of plaintiff, but that of Honold & Co.

2.  The next inquiry is, whether plaintiff's agent had power to pledge her stock.

The suggestion at once arises that he did not make the pledge, but his firm did. But conceding, for the sake of argument, that the pledge was his act, the inquiry is, whether the mandate to sell movable property includes the power to pledge the same.

The proposition is answered in the negative by the text of the Code. Article 2997 reads : "Thus the power must be express and special for the following purposes :

To sell or to buy.

To encumber or hypothecate."

Hence it follows that the power to pledge, which is an incumbrance and which to movable property, stands as a mortgage to immovable property, must be express and special and cannot be included in a mandate to sell stock and collect dividends.

In the case of Woodhouse vs. Insurance Company, 35 A. 242, this Court held that the power to pledge did not include the power to sell. The same rule prevails in the common law. Booth vs. Farmers and Mechanics' National Bank, 74 N. Y. Reports 228.

In support of their contention to the contrary, defendants' counsel cite the two following cases: Clark & Brisbin vs. Bouvain, 20 A. 71, Davidson & Hill vs. Bodley, 27 A. 150. In the first of these cases the sale complained of had been made by a pledgee under an act of pledge, and not by an agent under a power of attorney. The complaint was that the pledgee had sold other and more property of the pledgor than had been pledged to him. In the second case the agent for the sale of machinery had pledged it for his own debts to a third party, who had no knowledge that his debtor's possession was that of an agent. Hence it is clear that neither is in point on the question under consideration.

3. The last inquiry is, whether the defendants, under the circumstances of this case, are protected from plaintiff's attack, by the certificate of the company that the stock had been transferred to them. · If they had purchased the stock, for valuable consideration at the time of the transfer, they would unquestionably be entitled to that protection.

But, as the record shows, they were not the purchasers but merely the pledgees of the stock. It was not pledged as the property of plaintiff, but as that of Honold & Co. Throughout the whole transactions they treated, handled and finally sold the stock as the property of that firm, their debtors.

In their letter of May 18, 1877, which was the incipient step to the transaction, Honold & Co. stated to the defendants: "We, to this effect, have transferred to your name on the books of the St. Charles Street Railroad Company and handed to you the certificate for one hundred shares of the said company's stock, which you will please consider as a margin deposited by us on this consignment." * *

Hence it is clear that the stock was offered on the one hand, and accepted as a margin or collateral security on the other, as the property of Honold & Co., without any reference to, or concern about, the power of the agent, a member of the firm, but entirely distinct from it. Honold & Co. were not the agents of plaintiff, and she had never clothed them with the *insignia* of ownership of her stock.

True, the transfer on the books of the company was made by plaintiff's agent and in her name, and *quoad* the company, the transfer may have been correct. But defendants cannot invoke the legality of the transfer under the power of attorney, because they had no knowledge of its existence and had no concern about its utility in the premises. They did not pretend to deal with an agent, or bargain for the property of a third party. They took the word of Honold & Co. to the effect that they were the owners of the stock, and they must take the risk of their truthfulness.

They are in the attitude of a pledgee who receives valuable property in the possession and apparent ownership of his debtor, without inquiring into the latter's title or right of ownership.

Knowing that they had bought no stock in the company, they accept and quietly rely upon a certificate that they have become owners of one hundred shares of its stock, without making any inquiry into the title of their ostensible transferrors. They cannot invoke the rule which protects an innocent transferee of stock, without notice of its invalidity.

They are clearly amenable to the rule laid down by the Supreme Court of the United States in the case of Moore vs. Citizens' National Bank of Piqua, Federal Reporter, vol. 4, part 7, p. 345. In a decision rejecting plaintiff's claim to certain shares of bank stock, of which she held a certificate issued in her name, the Court said: "The certificate

which he delivered to the plaintiff was not in his name, but in hers; stating that she was entitled to so much stock.   *   *   *   The very form of the certificate was such as to put her on her guard.   She was not applying to the bank to take stock, as an original subscriber or otherwise, but she was bargaining with R. B. Moore for stock which she supposed him to hold as his own.   She knew that she had not held or surrendered any certificate, and never asked to see his certificate, or a transfer thereof to her.   *   *   *   She relied upon his personal representation, as the party with whom she was dealing, that he had such stock."   *   *   *

In our case there is no question as to the transfer of the stock on the company's book.   But had the defendants inquired, as it was their bounden duty to do, into the transfer on the books of the company, they would inevitably have discovered that they were dealing with stock as the property of Honold & Co., but which was the property of this plaintiff.

In that particular the circumstances of this case are not as favorable to the defendants as were those in the case of Stern Bros. vs. Germania Bank, 34 A. 1120.   In that case the defendant bank had no means of ascertaining the nature of Bader's possession of coupons which were payable to bearer, and which Bader held for collection.

The omission by these defendants to make necessary inquiries into the alleged title of their debtor, which were so easy to make, is fatal to the defense, and places them in the attitude of agents who have sold property belonging to third parties and not to their principal.

4. The plea of prescription of three years cannot avail them, because their possession was not as owners, but as pledgees.   This is shown by their own pleadings.

The possession of three years contemplated by Art. 3506, Civil Code, must be as owner.

"The creditor cannot acquire the pledge by possession, whatever may be the time of his possession."   C. C. Art. 3175.

I, therefore, conclude that plaintiff was entitled to recover, and I dissent from the opinion of the majority.

Bermudez, C. J. concurs in this opinion.