CUNY *vs.* ROBERT ET AL.

APPEAL FROM THE COURT OF THE SIXTH DISTRICT, FOR THE PARISH OF RAPIDES, THE JUDGE THEREOF PRESIDING.

A power to sell must be express and special. No particular form of expression is necessary, but it must distinctly express the intention of the seller so as not to admit of equivocation or serious doubt.

A request to the judge to charge the jury, that " a power to sell a slave must be *express* and *special,* and should not be inferred from circumstances," is too specifically and strongly expressed ; but on the other hand, to tell the jury if it appeared to have been "*fairly the intention* of the party to authorize a sale," and that they might "consider the sense in which the power was meant to be used, taken with the context," is too loose and indefinite.

It is not indispensably necessary, that the word " *sell,*" be used in a power or letter of attorney to sell a slave, but there should be something *expressed* which is equivalent, or has the same meaning.

If there is not *a possession* of five years, *with a title* legal and sufficient to transfer the property in a slave, the defendant cannot invoke prescription.

This is an action to recover from the defendant Robert, a negro woman named Lavinia and her child, which the plaintiff alleges he purchased from Gilbert C. Russell, the 3d June, 1832, for the price and sum of seven hundred dollars, and which slaves he alleges are in the hands of the defendant, who refuses to deliver them up. This suit was instituted the 1st April, 1833.

Robert pleaded the general issue, and prescription of five years ; and avers that he purchased said slaves from Isaac Franklin, by public act, on the 10th day of March, 1829, who is bound to warrant and defend the title. He prays that the plaintiff's demand be rejected, but that Franklin be cited in warranty ; and if judgment be rendered against him, that he have judgment against his warrantor for the sum of one thousand and five hundred dollars.

Franklin denied the plaintiff's allegations generally, and averred that he purchased a slave woman named Lavinia, of one William Nichols, which he supposes is not the same claimed in this suit ; but if so, that Nichols be cited in war-

ranty, and that he have such judgment against Nichols as may be recovered against him.

A curator *ad hoc* was appointed to Nichols, who resided in Tennessee.

The curator put in an answer, averring that Nichols purchased said negro woman from Francis W. Armstrong, in Tennessee, who had a good title. He prays that a curator *ad hoc* be appointed to him, and that he be cited in warranty and required to defend the title to said slaves ; and if judgment be rendered against this respondent, that he have a like judgment against said Armstrong.

The curator *ad hoc* of Armstrong's heirs, denied generally, and averred that the plaintiff's vendor, (Russell) long prior to the sale to him, by his letter of attorney contained in a private letter, authorized F. W. Armstrong to sell the negro woman, Lavinia, for certain purposes, with other slaves, &c. ; and that in virtue of said power, he did *bona fide* sell, and deliver said negro woman to William Nichols. He alleges that the sale from Russell to the plaintiff, is *simulated* and intended to cheat and defraud the said Armstrong's heirs, &c. That the plaintiff has paid nothing ; and is now carrying on said suit for the benefit of his pretended vendor, G. C. Russell. He prays that the plaintiff be required to answer, on oath, certain interrogatories, and that his demand be rejected.

Upon these pleadings and issues the cause was tried.

This case turns principally on the power contained in the following extract of a letter, from G. C. Russell to F. W. Armstrong.

*Dated 3d June,* 1827.

" Dear Armstrong :—I came out last night and found Edmond and Terry in deep distress, &c."

" I shall consign to you, Bob or Toulner."

" I shall write you from various places, in duplicate, to Mobile, and Nashville."

" *Do the best with George, Lavinia and Nelson,* and apply the whole of *the proceeds to your debt in bank.* I shall make all the haste that I can."

"Yours sincerely,

GILBERT C. RUSSELL."

" P. S. Show this to my folks."

" P. S. I have not time to read what I have written.   If any omissions, the contents will enable you to supply them."

"G. C. R."

" Maj. F. W. ARMSTRONG,"
            " *Huntsville, Alabama.*"

F. W. Armstrong acknowledges to have sold the slave Lavinia to Robert Armstrong, and to have delivered her the 10th August, 1827 ; and that he was to have a credit on his note, held by Robert Armstrong, of five hundred dollars, provided the girl pleased him.   If sold, F. W. Armstrong was to have the credit above stated, and which was allowed from the proceeds, on the note alluded to, the 1st January, 1829.

On the 4th March, 1829, R. Armstrong sold to Nichols, for the sum of five hundred dollars.

There was a verdict and judgment for the defendant, and the plaintiff appealed.

*Dunbar,* for the plaintiff.   Both parties claim under title from Russell.   The letter from Russell to Armstrong does not authorize a *sale.*   See *Civil Code, page 422, article* 10 ; and *Louisiana Code, article 2966, verbo mandate.*   The first requires a *special* authority to sell, and the latter both an *express* and *special* authority ; a general power is not sufficient ; or one which is to be derived from inference.   See 10 *Martin,* 679, decided under the old *Code.*   As to the plea of prescription it cannot avail ; the prescription of this state, can only operate from the time the slave was brought back, which appears from the deed from Franklin to Robert. See 9 *Martin,* 556.

*Gen. Thomas,* for the defendant, Robert, argued to show that the letter of Russell to F. W. Armstrong, contained full power and authority to sell the slave Lavinia, and that she was sold in pursuance of that letter.

*Brent,* for Franklin, called in warranty.   It is provided by law, that the power to sell must be both express and special.   *Louisiana Code,* 2965.

The above principle is not disputed, but no particular form, in constituting the agency, is required, *Idem.*, 2961 ; nor is it necessary to employ any particular set of words. It suffices, if the principal uses any language which clearly conveys his intention to authorize the sale. From the whole tenor of the letter of Russell to Armstrong, it is manifest that Armstrong was given the power to *sell* the slave Lavinia, although the word "sell" was not employed by him. The intention of the parties, when it is apparent, will always govern in cases like the present. 10 *Martin,* 679.

*Garland, J.,* delivered the opinion of the court.

This suit is brought to recover a mulatto woman, named Lavinia and her child, slaves for life, which the plaintiff says belong to him, having purchased them of Gilbert C. Russell, on the 3d June, 1832, by an act under private signature, proved to have been executed on the day it purports to be dated, by one of the subscribing witnesses. Robert claims the slaves, alleging and proving by the production of a notarial act of sale, that he had purchased them from Isaac Franklin, in New-Orleans, on the 10th March, 1829, who says he purchased her from Robert Armstrong, through the agency of one William Nichols, but shows no written title or evidence, other than a receipt which Robert Armstrong gave Nichols on the 4th March, 1829, acknowledging the receipt of five hundred dollars as the price of a girl named Lavinia, which he says was sold, on his account, to Messrs. Franklin, being the same girl conveyed to him by F. W. Armstrong, who alleges he had authority from Gilbert C. Russell, to sell the woman, and says he did sell her, in August, 1827, to the aforesaid Robert Armstrong, although the sale is not dated until the 19th day of June, 1833, about eighty days after the commencement of this suit, and the parties had notice of it. When Russell sold to the plaintiff, both parties knew the slaves were in the possession of the defendant, and that he had claimed and possessed them a little more than three years. The defendant cited Franklin as his warrantor, who called upon Nichols and he upon F. W. Armstrong, all

WESTERN DIST.
*October,* 1840.

CUNY
*vs.*
ROBERT ET AL.

of whom have answered. All the parties admit the woman once belonged to Russell, and the defendant says he authorized Armstrong to sell her; but the plaintiff and Russell deny it.

The alleged power to sell, the defendant says, is contained in a letter which he produces. It is addressed by Russell to F. W. Armstrong, Huntsville, Alabama, dated in the parish of Rapides, 23d June, 1827. It is written in a loose style, and not read by the writer after it was written, as is said in a postscript. He speaks of a variety of matters, among other things of the pain given to some other slaves by " the separation of Vincent and Lavinia." He directs Armstrong to deliver Vincent to his mother-in-law, and take a receipt from her, stating that when he should refund her from five to eight hundred dollars, Vincent should be returned. He speaks of two slaves called Tempsey and George, to be delivered by a person named Hunter, and a runaway called Ben, who he expects to come in that day, and says if he gets them, " you will receive them by the first conveyance. I shall consign to you Bob or Toulner." He then speaks of his property in Kentucky, which he intends selling, and of other matters; then comes that part of the letter, in which the power to sell is alleged to be contained. " Do the best with George, Lavinia and Nelson, and apply the whole of the proceeds to your own debts in bank ;" and the letter breaks into other matters again. The counsel for the defendant, contends, these words taken in connection with the other parts of the letter, indicate sufficiently the intention of Russell to sell, and in effect complies with the *article* 2966, of the *Louisiana Code,* which says a power to sell or purchase must be *express and special.* It is true the law has not provided any particular form for a power of attorney, and it is sufficient if the principal distinctly expresses his intention, but as the law now is, it must be so distinctly made known as not to admit of equivocation or serious doubt. This court, in 1822, when the old Code was in force, decided that a letter written by a principal to a third person, informing him of his determination to sell certain slaves, and requesting that person

A power to sell must be express and special. No particular form of expression is necessary, but it must distinctly express the intention of the seller, so as not to admit of equivocation or serious doubt.

to assist another (who he said was his agent) to sell, was a special authority under the *article* 10, *page* 422 of the old *Code; Steer* vs. *Ward et al.,* 10 *Martin,* 679. The Legislature afterwards took up the amendments to the old Code, and inserted the word *express* in the article, so that a power to sell or to purchase, must now be "express and special." *Louisiana Code, article* 2966. We are to presume the legislature knew what the decisions of this court were, and that by inserting the word *express* in the article in the *Louisiana Code,* it was intended to say, that something more definite and particular should be required than what the court had considered sufficient in the case of *Steer* vs. *Ward et al.,* or what was required by the old Code. The authority in the present case, is by no means as strong as in the case cited, and it seems the legislature did not think such a power sufficient, and required something more.

From the terms of the letter from Russell to Armstrong, it appears they were on terms of intimacy, but it does not appear in the record that the former owed the latter any thing, or that he was in any manner bound for him, nor does it appear that Armstrong owed any debts in bank; on the contrary, it appears he did not apply the proceeds to paying a debt in bank, but delivered the slave Lavinia to Robert Armstrong, who sent her to New-Orleans, in the early part of the year 1829, and gave F. W. Armstrong credit for five hundred dollars on a debt of his own. But admitting F. W. Armstrong to have been indebted to some bank, we cannot presume Russell intended to make him a donation of his slaves to pay the debt. The most reasonable construction is, he wished to aid his friend, and therefore directed him to do the best with the slaves to relieve himself, at the same time reserving the title to them. If Armstrong was in debt, and Russell wished to relieve him, it is more probable, if the debt was small, that Russell intended by the words "do the best with the slaves," that they should be hired and the proceeds used ; if it was large, the best for Russell's interest was to have them mortgaged and raise money ; thereby giving both an opportunity of redeeming them. Without

other circumstances, we consider the power too indefinite to authorize Armstrong to sell the slaves mentioned; and it appears he never did sell as agent.

There is another feature in this case which shows that F. W. Armstrong had doubts about his authority, or conducted his business very loosely, as he never made any written conveyance of the slave to Robert Armstrong, until after this suit was brought and all the parties knew it. That Nichols knew of the suit, is clear from his letter to the defendant and his counsel, and it is almost as certain, that F. W. and Robert Armstrong knew it also; if they did, then they knew Russell had previously sold the slave to the plaintiff, and the power was revoked. It is not pretended F. W. Armstrong ever purchased Lavinia from Russell, and in his sale he does not sell as agent, but as owner. There is no evidence that Russell or the plaintiff, who stands in his place in this transaction, ever ratified the acts of Armstrong.

As there have been two verdicts in favor of the defendant, and questions may arise as to the hire of the slave and her children, also between the defendant and his warrantor, in the event of a final recovery by the plaintiff, we think the justice of the case requires it should be remanded for a new trial.

On the trial the plaintiff requested the judge to charge the jury that " a power to sell a slave must be express and special, and should not be inferred from circumstances," which he refused, but charged, if from the whole language of the letter of Russell it should appear to have been " fairly his intention to authorize the sale, they ought to find for the defendant." The judge in the course of his charge, by subsequent remarks, somewhat modified the force of the first part of it, and concludes by leaving it to the jury, " to consider the sense in which it was meant to be used, taken with the context." We think the plaintiff's counsel requested the judge, too specifically and strongly, and we further think, the charge is too general and loose. We think he should have charged that the jury was to consider the whole letter, and if from it and concurrent circumstances in evidence, the intention of

A request to the judge to charge the jury, that "a power to sell a slave, must be *express* and *special*, and should not be inferred from circumstances," is too specifically and strongly expressed; but on the other hand, to tell the jury if it appeared to have been "*fairly the intention* of the party to authorize a sale," and that they might "consider the sense in which the power was meant to be used, taken with the context," is too loose and indefinite.

WESTERN DIST.
*October,* 1840.

R. R. R. ROAD CO.
*vs.*
WILLIAMS.

It is not indispensably necessary that the word "sell," be used in a power or letter of attorney to sell a slave, there should be something *expressed,* which is equivalent or has the same meaning.

If there is not a *possession* of five years, *with a title* legal and sufficient to transfer the property in a slave, the defendant cannot invoke prescription.

Russell to sell the slaves was distinctly and clearly expressed, then they should find for the defendant ; but the intention should not be equivocal or doubtful. That the law specifies no particular words or form in which the power should be made ; the word to *sell* is not indispensably necessary, but that there should be something expressed which is equivalent or has the same meaning.

We have examined the evidence carefully in connection with the plea of prescription of five years, and think it does not support it. The defendant has a transferable title, dated the 10th March, 1829. Franklin, his vendor, produces no title at all, nor had Robert Armstrong any written sale until after the institution of this suit, on the 1st April, 1833. There is not a possession of five years, with a title legal and sufficient to transfer the property.

It is, therefore, ordered and adjudged, that the judgment of the District Court be annulled, and reversed ; the verdict of the jury be set aside, and this cause remanded for a new trial, according to law ; and that the district judge be instructed to charge the jury as is herein stated ; and further, that the appellee pay the costs of this appeal.