No. 186.—I. U. Ball *v.* G. M. Bender.

An agent can not contract a loan, acknowledge a debt, alienate or mortgage the property of his principal, or do any other act of ownership, without express and special authority. But if the agent, under a general authority, sells property, the produce of the plantation under his charge, the principal must notify the purchaser, as soon as he is informed of the fact, that he rejects and repudiates the acts of his agent as unauthorized.

The contract of mandate may be tacit, as well as express, and the acts of the principal must be fairly and liberally construed towards those who contract with the agent, as well as towards the agent.

APPEAL from Tenth District Court, parish of Caddo. *Weems*, J. *Jones & Harris*, for plaintiff and appellee. *T. T. Land*, for defendant and appellant.

This case was tried by a jury in the district court.

Wyly, J. This suit is based on the following contract, viz:

"SHREVEPORT, LA., July 19, 1865.

"For and in consideration of forty-five bales of cotton, the property of Dr. I. U. Ball, which I acknowledge to have appropriated to the use of G. M. Bender, whose lawful agent I am, I hereby obligate the said Griffin M. Bender, as well as myself, to deliver to William Ball, agent for Dr. I. U. Ball, within ninety days from this date, a like forty-five bales of cotton, in Shreveport, in good shipping order, to weigh twenty-four thousand eight hundred and ninety pounds.

"(Signed)                       JAMES F. AINSLEY,
"Agent for G. M. Bender.
"(Witness)                     W. E. CHURCH,
"Captain A. A. G. U. S. Volunteers."

On the twenty-third of December, 1865, plaintiff, sued James F. Ainsley and Griffin M. Bender on said contract, attaching certain lands and personal property alleged to belong to the former, who was an absentee, and praying for judgment against them *in solido* for said cotton or its value.

On the eleventh of January, 1866, S. J. and E. E. Futch intervened, claiming that they had purchased the land and personal property attached from the defendant, G. M. Bender, in Jasper county, Mississippi, on the twenty-ninth of November, 1865, which was prior to the attachment.

The defendant, G. M. Bender, pleaded the general issue, and specially denied that James F. Ainsley was his agent or attorney in fact, for the sale of the cotton mentioned in plaintiff's petition, or for any other purpose, but averred that said Ainsley had no authority whatever to sell said cotton or contract an obligation for him; that, during his absence from the State, and after his overseer had been conscripted into the military service of the Confederate States, the said Ainsley, without his knowledge or permission, illegally took possession and control of his plantation and other property. ·

The court gave judgment, on the verdict of the jury, in favor of plaintiff and against the defendants *in solido,* for $2000, and sustained the attachment.

The defendant, Bender, has appealed.

It appears that the defendant, Griffin M. Bender, a resident of the State of Mississippi, owned a plantation in the parish of Caddo, which was managed and controlled during the last years of the war, to wit: 1863, 1864 and 1865, by James F. Ainsley, who was employed as agent and overseer for his father, by the son of said Bender.

That, during this period, Ainsley sold a lot of cotton bales on the plantation, to Joshua Dreyfouse, for Confederate bonds, giving an obligation to deliver the cotton at a future day. Subsequently, Dreyfouse sold, for Confederate money, forty-five bales of this lot, which still

remained on the plantation, to the plaintiff, Ainsley being notified thereof.

At the close of the war, Ainsley again sold the entire lot which he had previously sold to Dreyfouse (including the forty-five bales transferred to plaintiff), receiving in payment lawful money, and delivering it to the purchaser, Cundiff, who removed it from the premises. There was, however, other cotton, in the seed, on the premises, at the close of the war, and in the contract sued on, Ainsley, as agent for Bender, promised, within ninety days from the date thereof, to deliver forty-five bales to plaintiff, in place of those he had sold to Cundiff.

We will consider, first, the authority of Ainsley to contract an obligation for G. M. Bender, or to dispose of his property. We do not find in the record that any express or special power was ever given him. He was simply the overseer or agent, with only administrative power over the property of Bender, and we do not think he had authority to contract the obligation sued on, or to alienate the property of his principal. C. C. 2965. Power to contract a loan or acknowledge a debt, or to alienate or mortgage property, or do any other act of ownership, must be express and special. C. C. 2965, 2966; 16 La. 175;. 9 R. 293; 12 R. 221; 11 An. 46.

We do not find sufficient evidence in the record to establish a ratification of the sale to Dreyfouse for Confederate bonds. On the contrary, it appears that Bender was very much displeased. But whether he ratified it or not, the consideration for the · sale was unlawful, and no subsequent ratification could make it less so. 19 An. 459. The cotton remained all the time on Bender's plantation, in his possession, and if the overseer had not sold it the second time, neither the plaintiff nor his vendor, Dreyfouse, could have enforced the contract of sale, because of its immorality. C. C. 2450; 19 An. 460.

There is no evidence that Bender ever ratified, or was even aware of the contract sued on till this suit was instituted.

On the whole, we are satisfied that the judgment of the court below is contrary to the law and the evidence, and should be reversed.

It is therefore ordered that the judgment appealed from be reversed and annulled; and it is now ordered that plaintiff's demand be rejected, with costs in both courts.

---

## ON REHEARING.

LUDELING, C. J. A rehearing was granted in this case, on the reconventional demand of the defendant for the value of four bales of cotton sold by Ainsley, and delivered to the plaintiff.

The demand of the plaintiff was rejected because it was an attempt to enforce an unexecuted contract based on Confederate treasury notes; and the reconventional demand was not acted upon.

Ball v. Bender.

A careful examination of the evidence in the record convinces us that the opinion expressed by us last year, in this case, in regard to the authority of Ainsley to sell the cotton, was erroneous; but that question was not important; except in order to enable us to dispose of the reconventional demand, which was then overlooked.

We think the record shows that Ainsley was authorized by Bender to sell the cotton, and that he ratified the sale by his silence and conduct.

The evidence establishes the following facts: that Bender, a nonresident, had left a large plantation and negroes in charge of Ainsley, as his agent; that Ainsley managed the entire business connected with the plantation—bought what was necessary for its use, employed physicians, etc., and paid the accounts thus made in the name of Bender, out of the proceeds of the sale of corn, fodder, potatoes, etc.; that Ainsley signed notes as the agent of Bender, and gave a draft in his name, which was paid, and generally held himself out to the world as the agent of Bender. It further shows that he was instructed by Bender to run the negroes to Texas, if his neighbors moved theirs; and that he had no funds, except what he could raise by the sale of the products of the place. Ainsley, while denying that he had exprese authority to sell, states that he informed Bender of the sale of his cotton, by letter, and that Bender answered his letter; that he expressed dissatisfaction at the sale for Confederate notes, because the money was worthless. S. J. Futch swears that, in the fall of 1865, " Bender told him that he had got Ainsley to act as agent for him about the commencement of the war; that he told witness that he had understood that Ainsley had sold all of his cotton, about two hundred bales, for Confederate money, and that he would have a great deal rather have heard of his burning it, than have sold it for Confederate money. Bender told witness that he had instructed Ainsley to keep his negroes out of the way of the Yankees, and that he did not know that there was any money here to run the negroes off, and thought it a very lame thing in Ainsley to sell all of his cotton to get money enough to run the negroes off."

It was the duty of Bender to have notified the plaintiff, Ball, that he repudiated the act of Ainsley, as unauthorized, so soon as he was informed of the fact, even if Ainsley had not been authorized to sell. This he failed to do. C. C. 1811 ; 18 La. 517 ; 6 An. 539.

The contract of mandate may be tacit, as well as express; and the acts of the principal must be fairly and liberally construed toward those who contract with the agent, as well as toward the agent; and where the law does not require the contract to be in writing, the power to execute it may be in the simplest form, and the intention of the parties may be gathered, as much from their acts as from their agreements. 8 R. 236 ; 14 An. 302.

It is therefore ordered that the reconventional demand be rejected.