(92 South. 723)

No. 23556.

BRADFORD–KENNEDY CO. v. BROWN.

(June 23, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Logs and logging** ⊚⇒3(7)—**Instrument executed by grantee of timber held to transfer whatever rights it had.**

An instrument executed by the grantee under a timber deed authorizing and empowering another to cut and remove the timber and manufacture it into lumber, with the same power over the timber as it had under the deed, transferred whatever rights it acquired under the deed.

**2. Principal and agent** ⊚⇒137(1)—**Mandate; principal held estopped to deny agent's authority in making settlement.**

Where a buyer of lumber, which had failed to make a loan to the seller as agreed, wired the seller's attorney that its representative would call to adjust all damages, and the person so calling showed a telegram from the buyer's agent authorizing him to make any necessary adjustments, the buyer *held* estopped to deny his authority to make a settlement under which timber which had been conveyed to the buyer as security was released to the seller.

**3. Principal and agent** ⊚⇒170(2)—**Mandate; payment by principal in accordance with settlement held to raise presumption of knowledge and ratification of terms.**

A payment made by plaintiff immediately after the consummation of a settlement agreement by its alleged agent providing for such payment raised per se a presumption of knowledge on its part of the terms of the new agreement and of its ratification thereof.

**4. Principal and agent** ⊚⇒137(1)—**Mandate; necessity of written authority immaterial on question of estoppel.**

While the power of an agent to sell real estate must be express and in writing, this is immaterial where the question is whether the principal, by its conduct and representations, is estopped to deny the agent's authority.

**5. Estoppel** ⊚⇒52—**Thing done or said to influence another and acted on by him cannot be changed to his injury.**

When a person has done or said something with intent to influence the dealings of another, and the other has acted upon the faith of it, the former ought not to be permitted to change it to the injury of the latter.

**6. Principal and agent** ⊚⇒172—**Mandate; principal cannot disavow act for one purpose and adopt it for another.**

A principal cannot be allowed to disavow the act of his agent for one purpose while he adopts it for another.

Appeal from District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Action by the Bradford-Kennedy Company against John M. Brown. From a judgment for defendant, plaintiff appeals. Affirmed.

T. T. Land, of Shreveport, and H. B. Warren, of Ruston, for appellant.

J. E. Moore, of Homer, and Goff & Barnette, of Arcadia, for appellee.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

LAND, J. This is a petitory action in which plaintiff company seeks to be recognized as the lawful owner of all merchantable timber on a tract of 337 acres of land in Claiborne parish, and to recover the value of certain timber cut and removed from said land by defendant and his agents, and manufactured into lumber.

Plaintiff company has instituted this suit against defendant as a mere trespasser upon the land in question. It alleges that it acquired this timber by deed from Thos. B. Leake, the owner of same, under date of May 19, 1917, and that said deed was duly recorded in the conveyance records of Claiborne parish May 29, 1917.

Defendant attacks plaintiff company's deed on the ground that it was never intended as a sale or act translative of property, but as a mere mortgage, and was executed to secure a loan of $3,200 to be made by plaintiff company to one E. N. McDonald, who had agreed to purchase the timber in dispute from Leake before the execution of said deed, and that McDonald paid for said timber after the deed

was executed by Leake to plaintiff company. Defendant alleges that said loan was never made by plaintiff company to McDonald, and that said act, whether viewed as a sale or a mortgage, is therefore without any consideration.

Defendant claims title to said timber through transfer from T. B. Henderson of date October 17, 1917, for a cash consideration of $1,200. Henderson acquired said timber from E. N. McDonald by transfer of date May 28, 1917, for a cash consideration of $1,700. E. N. McDonald's title to said timber is derived from plaintiff company by the following instrument:

"State of Arkansas, County of Union. Know all men by these presents that whereas T. B. Leake, of Claiborne parish, Louisiana, did on the 19th day of May, A. D. 1917, make and execute a certain timber deed conveying to Bradford-Kennedy Company a corporation of Omaha, Neb., certain timber described in said deed, now E. N. McDonald is hereby authorized and empowered to cut and remove the said timber from said lands for his use and for manufacture into lumber by his mill at Junction City or any other mill he may locate or desire to use in the manufacture thereof, having the same power over said timber as the said Bradford-Kennedy Company acquired under said timber [deed]. Given this 28th day of May, 1917. [Signed] Bradford-Kennedy Company, by S. E. Lingard."

Plaintiff company does not deny that this instrument was signed by S. E. Lingard, its agent, but alleges in its petition that it never parted with its title to the ownership of said timber and the right to cut and remove same, nor gave or granted to any person the right so to do.

Defendant pleads that plaintiff company is estopped from denying the authority of its agent, as it held out Lingard to McDonald and others at the time of the execution of this instrument as its agent fully authorized to execute said instrument; that said instrument was executed to McDonald as a release of said timber, because of the failure of plaintiff company to advance to him the loan of $3,200, as it had agreed, and as a compromise of a threatened lawsuit and of the differences between McDonald and plaintiff company arising from its breach of its agreement to make said loan, and because the said McDonald had acted upon the authority of the said agent publicly avowed by plaintiff company, and had transferred said timber to innocent third persons for valuable consideration.

Defendant charges that plaintiff company, after receiving the benefit of said compromise effected through its public declaration of the authority of its agent to execute the release to McDonald, cannot be permitted to retain such benefit, and, at the same time, repudiate its agent's authority, after McDonald has acted upon the faith of such acknowledged authority, and third persons have acquired bona fide and for valuable consideration vested rights through transfer from McDonald.

Defendant not only pleads estoppel as against the alleged right of plaintiff to deny the authority of its agent, but alleges that, by its attempt to repudiate such authority in this suit, by its causing said deed from Leake to McDonald to be executed as a sale instead of a mortgage, and by claiming in this suit any rights under said purported deed, which was without consideration either as a sale or as a mortgage, plaintiff company is attempting to perpetrate a fraud upon defendant, and to deprive him of a just title to the timber in dispute, acquired by him in good faith and for valuable consideration.

[1] We do not find it necessary to consider any of the defenses urged by defendant in this case, except the plea of estoppel, for the reason that plaintiff company has a prior recorded deed to the timber in controversy, and the instrument executed by plaintiff company through its agent to McDonald clearly transfers to him whatever rights plaintiff

company acquired under the recorded deed from Leake, which upon its face is a sale for valuable consideration. Plaintiff company does not pretend that the transfer from it to McDonald was without consideration, nor does it assail this transfer in any way, except that it alleges that it was made by its agent without authority. If, under the facts of this case, plaintiff company is estopped from denying the authority of its agent, it is clear that defendant, who is in actual possession of this timbered land, by virtue of mesne transfers from McDonald, holds a good title to the timber in controversy.

We are of the opinion that the plea of estoppel is well founded. The facts relative thereto are plain and fully corroborated by the testimony of several credible witnesses.

[2] On May 18, 1917, E. N. McDonald sold to plaintiff company 4,000,000 feet of lumber, said company agreeing to advance 75 per cent. of the invoice at the estimated value of cars when accompanied by bill of lading, and to apply the remaining 25 per cent. when cars were sold to the extinguishment of a loan of $3,200 which plaintiff company had agreed to advance to McDonald. This agreement was made by E. N. McDonald and the Bradford-Kennedy Company, represented by Myers and Lingard, their agents.

McDonald gave a mortgage on one sawmill and all the lumber in his yard and on considerable timber holdings to secure this advance, and the next day he gave another mortgage, and, at the instance of Lingard, McDonald had Leake make the deed to the Bradford-Kennedy Company of the timber McDonald had agreed to buy from Leake, in order to further secure plaintiff company.

Then, in pursuance of the contract and agreement, Myers gave McDonald a draft of date May 18, 1917, on plaintiff company for $3,200. McDonald deposited this draft in the Merchants' & Farmers' Bank at Junction City, Ark., for collection, and drew consider-

able checks against it in payment for timber he was buying.

In compliance with said contract and agreement, McDonald had shipped to plaintiff company several cars of lumber, and while he was in St. Louis his home bank wired him that the plaintiff company had refused payment of the draft for $3,200. McDonald was forced to return to Junction City to take care of the checks drawn against the draft of plaintiff company deposited in his home bank, and was also compelled to immediately borrow money to take care of his checks.

McDonald placed the matter in the hands of his attorney, Neal C. Marsh, at Junction City, Ark., and through him demanded the cancellation of the contract between plaintiff company and himself, and the return of the mortgage and of the deed to the Leake timber, in a letter of date May 25, 1917, addressed to Bradford-Kennedy Company, Omaha, Neb.

In this letter plaintiff company was informed that McDonald had suffered considerable damage in having his checks turned down at Junction City, as it impaired his credit in purchasing timber, and that the deed prepared by the attorney of McDonald for Leake to execute had been executed by Leake direct to plaintiff company, and that the Leake timber had been paid for by McDonald with his personal check. Plaintiff company was advised in this letter that McDonald had said that he could not go ahead with the contract between plaintiff company and himself, as he had been forced to make other arrangements, and that, as the consideration for said contract had failed, he could not be held to it, and that therefore he demanded its cancellation and the return of the mortgage and the Leake deed.

Plaintiff company, shortly after the receipt of this letter, wired the attorney for McDonald from its office at Omaha that their rep-

resentative would be at the office of said attorney in Junction City, Ark., in a day or two to adjust all differences. Lingard appeared on the scene, and showed McDonald's attorney a telegram from C. W. Myers, stating that he could not come and for him to go ahead and make such adjustments as were necessary. Prior to this Myers and Lingard had wired McDonald to come to Alexandria, the Louisiana office of plaintiff company. He complied with the request and testifies that they desired him to go on with the contract and to accept the $3,200, and it was finally agreed between them that, if the Bradford-Kennedy Company would release the Leake timber and the Junction City mill and all the output, and the output of the Junction Planer Mill, McDonald would accept the $3,200. This left the output of the Upland mill to be shipped to plaintiff company under the new agreement. McDonald and Lingard then went to Junction City together to carry out this new arrangement, and Neal C. Marsh, attorney for McDonald, testifies that the agreement to this effect was duly executed and signed by the parties in his presence.

After the new contract had been executed, Lingard wired to plaintiff company at Omaha, and the money was wired from Omaha to McDonald at Junction City. The deed of trust on the property to be released under this new agreement was withdrawn from the clerk's office at Eldorado, Ark., and delivered to McDonald by Lingard, who also signed the release of the Leake timber in pursuance of said agreement. The original contract was delivered into the possession of Lingard, who afterwards stated to McDonald that he had mailed it to the office of plaintiff company at Omaha.

[3] Neither Lingard nor Myers have been placed upon the witness stand in this case by plaintiff company to prove want of authority on their part as agents of said company to execute the release of the Leake tim-

ber to McDonald, nor to prove that the new agreement placed in the hands of Lingard was not delivered to plaintiff company. The payment of the $3,200 by plaintiff company to McDonald immediately after the consummation of this new agreement raises, per se, a presumption of knowledge upon its part as to the terms of the new agreement, and of ratification of the agreement by plaintiff company.

The letter written by C. W. Myers to the defendant, J. W. Brown, of date November 9, 1918, in which it is stated by the writer that Lingard had no authority at any time to release the mortgage on the Leake tract, and that the writer had never known that the transaction had been made until several months afterwards, when he was told so by Mr. Cleaton, "or possibly some one in Bradford-Kennedy's office, Omaha," does not deny that the writer, C. W. Myers, the manager of plaintiff company at Alexandria, La., had no such authority; nor does it explain away the telegram from C. W. Myers to Neal C. Marsh, McDonald's attorney, stating that Lingard was authorized to adjust all differences; nor does it affect in any way the telegram from plaintiff company at Omaha to said attorney that it would send an agent to adjust all differences. The telegrams from Myers and from plaintiff company show clearly that, whatever may have been the usual authority of Lingard, he was on this particular occasion expressly authorized to adjust all differences between plaintiff company and McDonald, not only by the company itself at Omaha, but also by its Louisiana manager, after an agreement had been reached at Alexandria, La., by Myers, Lingard, and McDonald.

This new agreement was consummated in the latter part of May, 1917, and plaintiff's suit was filed on April 13, 1918, or nearly 12 months afterwards.

As the plaintiff company refused to pay

the $3,200 draft drawn on it by Myers, its Louisiana manager, in favor of McDonald, because the necessary papers were not attached, the fact that it wired the $3,200 to McDonald at Junction City, Ark., immediately upon receipt of Lingard's telegram, after the signing of the new contract, shows that it was acquainted with the terms of the agreement, and that its agent, Lingard, was duly authorized. It was also expressly notified in the letter of McDonald's attorney of date May 25, 1917, that McDonald demanded the release of the Leake timber and the cancellation of the contract.

The plaintiff company, by holding out its agent, Lingard, as having full authority to act in this matter, has received the benefit of exemption from a lawsuit for damages for the breach of its original contract with McDonald, and, at the time of the trial of this case, said company was engaged in foreclosing the mortgage retained by it, under the new compromise agreement with McDonald. It is endeavoring in this suit to repudiate its part of the agreement by pleading want of authority in its agent, and at the same time it is seeking to retain the benefit to itself arising under the same agreement.

Mr. Peppers, a witness for defendant, also testifies that he was contemplating putting in a hardwood mill, and had a conversation with Myers and Mr. Lingard about it, and that Myers told him that Lingard was their representative, and whatever he did was all right; that he was supposed to look after their business in that territory.

[4] It is true that the power of an agent to sell real estate must be express and in writing. However, this question is not involved in this case. The matter at issue is whether the plaintiff company, through its conduct and representations as to the authority of Lingard as its agent, is estopped from denying his authority in signing for said company the release of the Leake timber to McDonald.

[5] It is well settled that, when a person has done or said something with intent to influence the dealings of another, and the other has acted upon the faith of it, the former ought not to be permitted to change it to the injury of the latter. Sicard v. Gumbel, 112 La. 483, 36 South. 502; Chatman v. Bundy, 130 La. 158, 57 South. 786; Breaux v. Lumber Co., 125 La. 421, 51 South. 444; Ledoux v. Lavedan, 52 La. Ann. 311, 27 South. 196; Jones v. Jones, 51 La. Ann. 636, 25 South. 368; Alexander v. Bourdier, 43 La. Ann. 321, 8 South. 876; Lippmins v. McCranie, 30 La. Ann. 1251; Blanchard v. Allain, 5 La. Ann. 367, 52 Am. Dec. 594; Beach v. McDonough, 5 Rob. 352.

[6] A principal cannot be allowed to disavow the act of his agent for one purpose, while he adopts them for another. Hulse v. Dorsey, 14 La. Ann. 302; Ball v. Bender, 22 La. Ann. 493.

The plea of estoppel is therefore maintained.

For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellant.