IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30705

Summary Calendar

_____


IN THE MATTER OF:   JIMMY H. BURKS AND
                    JANET SCOTT BURKS,

                                        Debtors.


DANNY REX SCOTT,

                                        Appellant,

                    versus

FIRST NATIONAL BANK OF BENTON,

                                        Appellee.


_____

Appeal from the United States District Court
for the Western District of Louisiana
(95-CV-608)

_____

November 17, 1995

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

     Danny Rex Scott appeals from the judgment of the United

States District Court affirming the judgment of the United States

Bankruptcy Court.  The bankruptcy court ordered the rescission of

a credit sale deed conveying land owned by First National Bank of

_____

     [*]Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession."  Pursuant to that Rule, the Court has determined
that this opinion should not be published.

Benton to Danny Rex Scott.  We have jurisdiction, 28 U.S.C. § 1291, and we now reverse.

I.

In April 1993, First National purchased 49.5 acres of land in Bossier Parish at a sheriff's sale.  Burks was the original owner of this land but had mortgaged the property to First National as security for a loan.  When Burks later defaulted on the loan, the bank foreclosed on the property.

Shortly after the bank acquired the property, Burks and the bank entered into negotiations for the sale of this property back to Burks.  Although Burks was unable to take title in his own name due to an outstanding judgment against him, he advised the bank that his brother-in-law, Scott, was willing to purchase the land.

Subsequently, Burks and the bank agreed to sell the land for $85,000 to Scott but with a reservation of mineral rights in favor of the bank.  Significantly, Scott did not participate in these negotiations.  Indeed, as the bankruptcy court found, Scott had no contact with the bank until the day the deed was executed.  Although Burks informed Scott that he had reached an agreement with the bank for the sale of the land, Scott had no knowledge that Burks had agreed to the bank's reservation of mineral rights.

After concluding the negotiations with Burks, Jessie Williams, the bank's president, contacted an attorney, James Southerland, and asked him to prepare the deed conveying the

2

property to Scott.  Williams did not instruct Southerland to include a reservation of mineral rights in the deed, and, not surprisingly, the deed prepared by Southerland did not contain a reservation of such rights.

In May 1993, Scott and the bank executed the deed, closing the sale.  Williams arrived at Southerland's office prior to the arrival of Scott, reviewed the deed, and signed it on behalf of the bank.  Scott arrived at Southerland's office later in the day.  Scott asked Southerland if the deed conveyed the mineral rights, and Southerland responded that it did.  After receiving this assurance, Scott signed the deed and paid $40,000 of the purchase price, $30,000 of which came from Burks.

After signing the deed, Scott went to the bank to sign the loan documents for the $45,000 balance remaining on the purchase price.  Williams did not mention any reservation of mineral rights, nor did he ask about the nature of the relationship between Burks and Scott.  Scott left the bank confident that he had purchased both the land and the mineral rights from the bank.

A few weeks after the closing, Williams recognized his error in not including a reservation of mineral rights in the deed.  He approached Scott and asked him to execute a deed of correction reserving the mineral rights to the bank.  Scott refused, and this lawsuit followed.

After a two-day trial, the bankruptcy judge ordered the rescission of the sale.  Reasoning that Burks was Scott's agent by estoppel, the bankruptcy judge concluded that Scott was bound

3

by the terms as negotiated by Burks, which included the reservation of the mineral rights in favor of the bank. Consequently, the bankruptcy court concluded that because the deed did not reflect the actual agreement reached by the parties, there was a mutual error justifying the rescission of the sale. The district court affirmed the judgment without comment, and this timely appeal followed.

## II.

The judgment of the bankruptcy court rescinding the sale rests upon the finding that Burks was Scott's agent by estoppel. Although the bankruptcy court found that Burks was Scott's agent in fact, Louisiana law requires agency agreements for the purchase of immovable property to be in writing. La. Civ. Code art. 2996-97. Because Scott did not give Burks written authorization to act as his agent for the purchase of the land from the bank, the bankruptcy court relied upon the common law doctrine of agency by estoppel, which does not require such written authorization, to hold that Burks was Scott's agent.

On appeal, Scott contends that Louisiana has not adopted the doctrine of agency by estoppel and that, even if Louisiana had adopted the doctrine, the facts as found by the bankruptcy court fail to satisfy the requirements of agency by estoppel. We agree with the latter contention.

Although the case law is far from pellucid on this point, we are persuaded that Louisiana has adopted the doctrine of agency by estoppel. In _Tedesco v. Gentry Development, Inc._, 540 So.2d

4

960, 965 (La. 1989), the Louisiana Supreme Court held that a corporation whose president entered a contract for the sale of land to Tedesco was not bound by the president's actions under the doctrine of agency by estoppel since Tedesco had failed to show detrimental reliance upon the corporation's manifestation of an agency relationship. Significantly, the court rested its decision on the failure of Tedesco to satisfy the requirements of the doctrine of agency by estoppel, not on the doctrine's inapplicability in Louisiana. In addition, at least one court has interpreted Tedesco as adopting the doctrine of agency by estoppel. In re Manville Forest Products Corp., 896 F.2d 1384, 1392 (2d Cir. 1990); see also Bradford-Kennedy Co. v. Brown, 152 La. 29, 92 So. 723, 724, 726 (1922) (holding that plea of agency by estoppel was well-founded).

Even so, we agree with Scott that the bankruptcy court's conclusion that the bank satisfied the requirements of agency by estoppel, which conclusion the district court affirmed, is erroneous. To prevail on a claim of agency by estoppel, the bank "not only must show reliance on the conduct of the principal, but also must show such a change of position on his part that it would be unjust to allow the principal to deny the agency." Tedesco, 540 So.2d at 964. The agent's representations that an agency relationship exists are insufficient to create an agency by estoppel. In re Manville Forest Products Corp., 896 F.2d at 1392.

5

In this case, First National failed to demonstrate that its reliance on the existence of an agency relationship between Burks and Scott resulted from the conduct of Scott, the principal in this transaction. To the contrary, although the bank had numerous contacts with Burks that led it to believe that Burks was Scott's agent, the bankruptcy court found that Scott never discussed the sale with the bank prior to the day he signed the deed.[1]

The bank responds that Scott's failure to inform it that Burks was not his agent is sufficient to justify its reliance on the existence of an agency relationship between Scott and Burks. We disagree. Under Louisiana law, "'[o]ne dealing with an agent, by the mere fact of agency, is given the right and duty to determine, at his peril, whether the agency purportedly granted by the principal will permit the proposed act by the agent.'" Id. (quoting Bamber Contractors, Inc. v. Morrison Engineering & Contracting Co., 385 So.2d 327, 330 (La. App. 1980)). Given this duty, the Second Circuit in In re Manville Forest Products Corp. denied the existence of an agency by estoppel, holding that the third party's reliance on the purported agent's title and managerial status was not reasonable. 896 F.2d at 1392.

---

[1] The bank responds that Scott admitted during the course of this litigation that Burks had the authority to negotiate on his behalf. While such an admission is relevant to the determination whether Burks was actually Scott's agent, it is irrelevant to the determination whether Burks was Scott's agent by estoppel. The latter inquiry focuses exclusively on whether Scott's conduct prior to the sale reasonably justified the bank's reliance on the existence of an agency relationship.

6

Similarly, First National's reliance on Scott's silence was unreasonable, particularly since it had ample opportunity to ask Scott about Burks's authority to act as his agent.

Finally, the bank claims that Scott ratified Burks' agreement with the bank by signing and accepting delivery of the deed. We disagree. "The general theory of ratification of the unauthorized acts of an agent is that the principal, <u>with full knowledge of the facts</u>, consents to the unauthorized actions and adopts the contract as if it had been previously authorized." <u>Everett v. Foxwood Properties</u>, 584 So.2d 1233, 1236 (La. App. 1991) (emphasis added). Here, the bankruptcy court found that Scott did not know that Burks had orally agreed to the bank's mineral reservation. Consequently, Scott did not--indeed, could not--ratify an agreement the terms of which he did not fully know.

## III.

Because Danny Rex Scott did not induce, by his own conduct, the bank to reasonably rely on the existence of an agency relationship, we hold that Burks was not Scott's agent by estoppel. We REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

7