### No. 381

### First Circuit

### NEW ORLEANS FUR EXCHANGE, INC. v. LEVY ET AL.

(January 9, 1929. Opinion and Decree.)
(March 6, 1929. Rehearing Refused.)

C. A. Blanchard, of Morgan City, attorney for plaintiff, appellee.

C. J. Boatner, of Franklin, attorney for defendants, appellants.

ELLIOTT, J. New Orleans Fur Exchange, Inc., claims $548.50 of Mrs. M. L. Levy, wife of W. J. Levy, as a balance due on account; alternatively and in case the amount is found not to be due by Mrs. Levy, the claim is then for judgment against W. J. Levy.

The account sued on is marked "Exhibit A" and is annexed to and made part of the petition.

The plaintiff alleges that the account was made up and furnished to it by W. J. Levy. That Mrs. M. L. Levy has been engaged in the business of buying and selling furs and pelts for a number of years, conducting and carrying it on through her husband, W. J. Levy, as her agent with full and plenary powers to buy, sell, make contracts, agreements, draw moneys upon her account, and deposit in her name and to her account all moneys received from sales, contracts or agreements. The petition alleges an agreement between plaintiff and W. J. Levy entered into in regard to buying and selling fur and whereunder petitioner furnished a certain sum of money to said Levy with which said Levy was to purchase fur and ship same to petitioner for re-sale, and as to which petitioner and said Levy were to share equally in the profits.

Peremptory and dilatory exceptions were filed by the defendants, all of which were overruled or referred to the merits. None of them were urged by defendants in their oral arguments; neither are they referred to in their briefs. We therefore look on them as having been abandoned.

Mrs. Levy denies all the allegations in plaintiff's petition. She avers that she knows nothing about any dealings between plaintiff and her husband and that if same were had they were not for her account and she has no interest therein.

W. J. Levy denies the indebtedness alleged against him. With reference to plaintiff's allegations about furnishing him money for the purpose of buying and selling fur, he admits an agreement between the plaintiff and himself on the subject, but alleges that it was between the plaintiff and himself personally, and not, on his part, as agent for his wife. He alleges that plaintiff did not keep the agreement and deals at length with what he claims the plaintiff did and did not do under it; violating it, etc. We find that the subject matter of this agreement has no bearing of consequence on the litigated question in the case. It is therefore put aside as an irrelevancy.

The indebtedness which the plaintiff claims is clearly established. The only contestable question is, whether it is due by Mrs. M. L. Levy or by W. J. Levy. On this subject the evidence shows that Mr. and Mrs. Levy are separate in property by judgment rendered many years ago. It is also shown by her testimony that she inherited from her people some time in the past, date not stated, between five and eight hundred dollars. But according to the evidence, within the last several years past, immovable property has been acquired by purchase in her name, the value of which is not stated, but worth undoubtedly as much as twenty thousand dollars, all of which was purchased by W. J. Levy in the name of M. L. Levy, his wife. The property would

sometimes be paid for in cash, but generally there would be a small cash payment and the balance of the purchase price would be evidenced by mortgage notes executed by Mrs. M. L. Levy payable at future dates, and secured by mortgage and vendor's privilege retained on the property.

A few years back he purchased a boat called the "Emma Louise," taking his title in the name of M. L. Levy. This boat is used for any purpose for which it may be needed; but according to the evidence the purpose for which it was bought and the main use to which it is and has been applied is the business of buying and selling fur, carried on by W. J. Levy.

The evidence shows that M. L. Levy is not and has never been engaged in business of any kind. But W. J. Levy has been engaged in the business of buying and selling fur for many years. He buys and sells fur and does nothing else. According to the evidence, when the time of the year approaches for the business to commence Mrs. M. L. Levy executes a mortgage on the immovable property in her name in favor of the bank. In that way the capital needed is obtained and taken in charge by W. J. Levy. He deposits it in the bank in the name of "M. L. Levy, per W. J. Levy." As cash is needed for the purpose of the business he draws it out by means of checks drawn and signed "M. L. Levy, per W. J. Levy." Whenever he makes a sale of fur he deposits the amount received in the bank to the credit of this account. There is no property of any kind, bank account nor anything else, carried in the name of W. J. Levy. Everything, the bank account and all the property, is in the name of M. L. Levy. The property bought for cash was paid for by checks drawn by W. J. Levy signed "M. L. Levy, per W. J. Levy." The mortgage notes executed by Mrs. M. L. Levy were all taken up and paid by W. J. Levy out of the bank account kept as above stated, and by means of checks drawn in the way above mentioned. It was the only account kept. The rents and revenues of the houses and property in the name of Mrs. Levy were deposited in that account. The family expenses are paid by W. J. Levy with money drawn from it in the same way. If Mrs. Levy drew a check, which she did not often do, it was drawn by her personally but paid out of the same account.

The situation and the evidence seems to indicate that W. J. Levy and his wife, the wife of course acting under the guidance of her husband, have evolved a dual method of doing business, whereby all the profits made by him in buying and selling furs become the business of M. L. Levy. It is all placed to the credit of that account and invested in that name, but the debts of the same business are due by W. J. Levy, and as there is nothing in his name, the creditors can do nothing.

The account sued on evidences a debt contracted by W. J. Levy in his business of buying and selling fur and is based on moneys obtained by him from plaintiff under the promise that fur was about to be shipped to cover the amount obtained, but which was withheld and not shipped. The account was made up by D. M. Levy, son of defendant, and handed to two of plaintiff's officers who had come to Morgan City to see W. J. Levy about his failure to ship as promised. When the account was handed to the plaintiff's agents, W. J. Levy promised to send a check the next day to cover the balance due, but did not do it. W. J. Levy and his son, D. M. Levy, claim that the promise to send the check was conditioned on plaintiff's promise to send a statement showing the price of some fur which plaintiff had received from defendant and

had sold, and in which W. J. Levy had an interest. The plaintiff's two agents deny that the promise was so conditioned. We find four witnesses to the promise and only two in support of the condition. To our mind the promise is proved but the condition is not established.

It is defendants' main contention that the debt sued on must be regarded as due by W. J. Levy. We find that the amount is due the plaintiff on account of the fur business carried on by W. J. Levy for the benefit and profit of M. L. Levy. That the money obtained from the plaintiff, and which constitutes the indebtedness in question, was deposited in the bank to the credit of "M. L. Levy, per W. J. Levy." That W. J. Levy, in depositing the credits of the fur business in the account, and in the constant use of it, as agent, is in fact the duly accepted and accredited agent of M. L. Levy in all business matters connected with the account, and which as stated, is supplied with funds and kept going by the business conducted by W. J. Levy.

We therefore find that M. L. Levy is liable for the amount due the plaintiff. There was judgment against her in the lower court and we think properly so.

Judgment affirmed. The defendants and appellants to pay the costs in both courts.