No. 647

First Circuit

———

## FRENCH MARKET ICE MFG. CO. OF N. O., LTD., v. DALTON

———

(October 8, 1930. Opinion and Decree.)
(December 1, 1930. Rehearing Refused.)
(January 5, 1931. Writs of Certiorari and
Review Refused by Supreme Court.)

———

C. A. Blanchard, of Morgan City, attorney for plaintiff, appellee.

L. O. Pecot, of Franklin, attorney for defendant, appellant.

ELLIOTT, J.   French Market Ice Manufacturing Company of New Orleans, Limited, is the plaintiff in a suit against John Dalton for $1,402, alleged by plaintiff to be the balance due it by defendant on account, for ice sold and delivered to said Dalton during the months of May, June, July and August, 1926. The plaintiff alleges that the total amount sold was $2,152, on which the defendant paid $750, leaving $1,402, claimed in its petition.

The plaintiff alleges that said Dalton requested it to bill the ice to John Dalton Company and to carry the account in that name, which was done for his convenience.

It further alleges upon information and belief that it was so requested by said Dalton as a ruse, in anticipation of defeating its claim against him personally for liability on account of said ice.

That said John Dalton Company is com-

posed of John Dalton, his wife and sister, and has been an inactive corporation for several years; no meeting of stockholders having been held or officers appointed, and no authorization given to the self-styled president, John Dalton, to engage in the ice business. That said ice business was carried on truly and simply for the benefit of John Dalton individually.

That said John Dalton used all the funds received from the sales in the ice business, derived the sole and exclusive benefit from the said business, and is therefore personally responsible to your petitioner for the amount due on said account.

Judgment against John Dalton was prayed for accordingly.

Defendant urged against plaintiff's petition an exception of no right or cause of action. The exception was overruled in the lower court. Defendant urges that the ruling was erroneous.

Defendant contends that plaintiff's averment that he requested it to bill the ice to John Dalton Company and to carry the account in that name as a ruse, in anticipation of defeating its claim against him personally, is contradicted by subsequent averments admitting that John Dalton Company was a corporation, without alleging that it had been legally dissolved or liquidated, and gives no right to a judgment against him as a stockholder.

Defendant is not sued as a stockholder in John Dalton Company, Ltd.

The averment is that he personally contracted the debt and endeavors by a ruse to escape liability. That he engaged in and carried on the ice business, with ice received from the plaintiff under said contract for his personal benefit, used all of the funds derived from the sales of said ice; and personally received the sole exclusive benefit of the business, states a cause of action against him personally.

The exception was properly overruled.

Defendant urges that plaintiff knew of the existence of the company, and having dealt with it as such, is estopped to deny its corporate capacity, citing Bond & Braswell v. Scott Lumber Co., 128 La. 818, 55 So. 468, and Tulane Improvement Co. v. Chapman & Co., 129 La. 562, 56 So. 509.

The lower court reviewed the case but makes no mention of this plea.

Defendant filed a petition for rehearing in the lower court, setting forth the various matters in regard to which he contended that the court had erred; but made no complaint on account of the failure of the court to rule on or to sustain such a plea.

The first and fundamental principle of the law on the subject of estoppel by matters in pais is that the language or conduct of the party estopped was acted on by the party urging the estoppel, and that the party thereby so induced to act will suffer injury if the other party is permitted to controvert his act, or deny what he has held out to him to be true. Greenleaf on Evidence, vol. 1, subject Presumptive Evidence, secs. 22, 27, and subject Admissions, secs. 207-209; Jones on Evidence, subject Admissions, secs. 275, 277, 279, 280; Best's Principles of Evidence by Chamberlayne (7th International Ed.) subject Admissibility and Effect of Evidence, sec. 543, p. 495, and note p. 504; Bigelow on Estoppel, subject Estoppel by Conduct, secs. 1 and 2, pp. 556 to 565.

The defendant has not so alleged in his answer, nor was any proof of that kind

tendered on the trial; hence there was no question of estoppel before the lower court, and there is none before this court.

In the case of Bond & Braswell v. Scott Lumber Co., supra, and Tulane Improvement Co. v. Chapman & Co., supra, creditors, after dealing with a corporation as such, sought to hold the stockholders liable as commercial partners, because of informality in the act of incorporation.

In the present case, the plaintiff alleges that it contracted and dealt with John Dalton personally, and that the said John Dalton personally owes the debt that the contract calls for.

Defendant denies that he dealt with plaintiff personally, and personally contracted the debt. He alleges that he acted only as the agent and representative to John Dalton Company, Limited; that the plaintiff dealt with John Dalton Company; and that John Dalton Company, Limited, owes the debt. The lower court acted on this issue and it was the proper course to pursue; there was no question of estoppel alleged to the court.

The defendant, on the trial, objected to parol evidence to prove a promise to pay a debt of a third person. The court ruled on this objection several times, holding that according to the plaintiff there was no third person debtor; that according to defendant if there was a debt, it was due by a third person; that the subject-matter involved the gist of the controversy and referred it to the merits.

Defendant urges that the ruling was in violation of the Civil Code, art. 2278. The objection was good, on the theory that the debt was due by a third person. But that theory could not become controlling until it had been first shown that the debt was due by a third person. The objection assumed the fact. The question was the principal issue before the court and could only be decided after hearing the parol evidence concerning the alleged oral agreement entered into, upon which the ice was sold and delivered. It was only after hearing the evidence as to the identity of the debtor, that the court could say whether it was John Dalton personally, or John Dalton Company, Limited, that owed the debt. The action of the court in referring the objection to the merits and hearing the parol evidence was correct.

The testimony of S. P. Simone, president and general manager of plaintiff, was taken in New Orleans on May 28, 1928. He was asked in behalf of the plaintiff:

"Q. State whether or not you have ever had any business dealings with John Dalton, and if so, what those business dealings were and the manner in which your business relationship with John Dalton originated."

His answer in effect was that John Dalton came to his office and stated that because of particular circumstances obtaining among the ice dealers of Morgan City, he desired to purchase carloads of ice in New Orleans. He also requested, at the time, that the bills of lading and the ice be shipped to John Dalton Company, and requested that he make the bills out under said title, in order, as he stated, that the retail ice dealers would not be suspicious of him. At the time he was not advised that there was any John Dalton Company, Limited, or that Mr. Dalton was connected with a corporation of the same name. The references that were given me in connection with the matter were references of John Dalton himself, and the reports were given to me on John Dalton himself. I knew nothing whatever of any corporation

by the name of John Dalton Company, Limited.

In response to interrogatory 6, he said:

"In opening this account, I relied as an official of the company solely and exclusively on the declarations of John Dalton, his credit, standing and promises that upon selling the ice, he would make remittances to cover. It was only upon the failure of the ice business and the assets of John Dalton Co., Ltd., being seized that any endeavor was made on the part of John Dalton to avoid personal responsibility, and an attempt made to have the company look to the John Dalton Company, Limited, for the payment of this claim. Prior to this all business relations were to be with John Dalton himself. And the plaintiff looked exclusively to him for payment."

Defendant did not cross the interrogatories propounded to Mr. Simone, but on the trial of the case, which commenced March 30, 1929, Mr. Dalton was asked on cross-examination:

"Q. Mr. Simone in his answer to interrogatory No. 3 says that you stated to him as follows: That you requested at the time that the bills of lading and the ice be shipped to John Dalton Co., and requested that bills be made out in the same way, so as to not cause any suspicion of you by the retail ice dealers in Morgan City, and at that time he was not advised that there was any John Dalton Co., Ltd. Why was that statement made?

"A. Mr. Simone's statement is a misstatement. I made no statement like that to him. I introduced myself as John M. Dalton, president of the John Dalton Co., and Mr. Simone introduced himself as vice-president and general manager of the French Market Ice Co., Ltd. At the time we discussed the ice proposition he stated that he was a large shipper of ice in car lots, and appeared anxious to get the business. He knew who I was selling it to and he billed the account. He was not interested as to where the ice was going or who was going to buy it, or anything else in connection with the contract."

Mr. Dalton must be supposed to have understood the question, as it was plainly stated; but in answering it, he neither denied having made the request imputed to him, nor did he deny Mr. Simone's further statement that Mr. Dalton did not advise him that there was a John Dalton Company, Limited. Mr. Dalton gave his testimony at length. Mr. Simone had given his testimony some eight or nine months before, yet he did not deny any of the other statements of Mr. Simone.

Defendant's failure to deny, as a witness, the statements of Mr. Simone adds weight to what Mr. Simone says. The ice was shipped to John Dalton Company. The difference is not important insofar as concerns the proper disposition of this case.

The evidence shows that John Dalton Company, Limited, was incorporated January 3, 1906. It was authorized by its charter to engage in general mercantile business, wholesale and retail of every kind; to engage in the manufacture and sale of ice, wholesale and retail; cultivating, packing, canning, and shipping oysters, shrimp, fish, etc. John Dalton testified that John Dalton Company, Limited, was reorganized in the year 1917, and that 596 of the 600 shares of its capital stock became vested in him, two in his wife and two in his sister. That he became president, his wife vice-president, and his sister, secretary-treasurer; that some stockholder meetings were held. But his oral statement is the only showing made on the subject. The charter provides that officers are to be elected on the first Wednesday in January of each year. No minutes of any date showing a meeting of

stockholders or the election of officers were produced to the court. No bank deposits in the name of John Dalton Company, Limited, nor writings of any kind showing accounts due to John Dalton Company, Limited, were produced, except three statements of account for hardware, one of which bears date August 4, 1926, another September 9, 1926, and the other September 16, 1926, but nothing was produced showing that it had dealt in ice.

Mr. Dalton testified that John Dalton Company, Limited, had sold ice since the beginning of the account sued on, and produced some witnesses who testify corroboratively, but the fact is not to our mind established.

The record shows that defendant was in the ice business personally as far back as March 22, 1926, and was in the business up to September 8, 1926, at which time plaintiff's account commenced.

The record shows that on January 12, 1928, John Dalton, Jr., defendant in the present suit, was sued on an ice account in the district court for the parish of St. Mary, by Terrebonne Ice Company, Inc.

The plaintiff in the suit alleged that petitioner had sold and delivered ice to the said John Dalton, Jr., at various times between the dates March 22, 1926, and September 8, 1926, aggregating the sum of $335, upon which there has been paid certain sums aggregating the sum of $260; all as will more fully appear by sworn itemized statements of said account which is thereto annexed and made part thereof.

Defendant by his counsel answered the petition on February 7, 1928, alleging that by verbal agreement with plaintiff, he agreed to buy ice by carloads between the dates set forth in plaintiff's petition, for which he was to be billed at $5 per ton, but in fact was to cost him f.o.b. cars at Houma, La., only $3.50 per ton. That this price was specially agreed upon, and plaintiff's agreement was to allow your respondent sufficient extra weight for meltage and in addition to make up the difference between $5 per ton for which he was billed, and the price of $3.50 per ton he was to pay for said ice. That petitioner shipped respondent 75 tons of ice between the dates aforesaid, allowed for the meltage in the weight of each shipment, but failed and neglected to allow the extra weight to make up said difference in the price agreed on, even though respondent demanded of plaintiff to do so. The answer judicially admitted that he had personally dealt in ice from March 22, 1926, to September 8, 1926. It judicially admitted that he was personally dealing in ice up to September 8, 1926, on which day the account sued on herein by the plaintiff commenced.

The defendant admits as a witness that the proceeds of the sales of the ice received from the plaintiff herein were deposited in the bank to his personal credit in the name of John Dalton. That he used the money as he saw proper; that the payments on the account sued on of July 21, 1926, in amount $500, and that of August 3, 1926, of $250, were made by checks on the account kept in his name. Asked to produce the checks showing these payments, to the end that it might be seen that they were signed John Dalton, he claimed that he did not have them.

The evidence shows convincingly that John Dalton Company, Limited, was inactive, as plaintiff alleges, and had been for years. That defendant in contracting

for, buying and selling, and receiving ice from plaintiff was dealing and acting for himself and for his personal benefit and profit, and that he is plaintiff's debtor on said account.

The theory of the defendant in the present case is similar to that of the defense in New Orleans Fur Exchange, Inc., v. Levy et al., 10 La. App. 166, 119 So. 553. We deem it unnecessary to discuss the question as to the identity of the debtor any further. The evidence shows that defendant is the responsible party.

Defendant denies in his answer that the account sued on is correct, but does not allege in what way it is wrong. He testified on the trial that about 14 different shipments on as many different days, mentioning each from the account, were short in tonnage and weight, stating in each instance the amount. No accounts, data, nor memoranda of any kind were produced to support his recollection. His testimony was given nearly three years after the shipments had been made. It was impossible for him to remember the amounts of tonnage and weights of shipments on these different days so long past, without written data made at the time to support his memory. His testimony on this subject is not in harmony with his letters written at the time the ice was being received. In one written July 20, 1926, addressing Mr. Simone, he says:

"I hand you herein my check on Bank of Morgan City & Trust Co. for $500.00 which I shall thank you to place to the credit of our account. I want to thank you personally for the excellent services rendered and hope to see you at the earliest opportunity when I may reach your City.
"With best wishes I am, with regards
"(Signed)   J. M. Dalton."

More than half of the shortage which the defendant professed to remember and mention, if such there had been, was previous to the date of this letter. In another letter written August 9, 1926, addressing the plaintiff, he says:

"We hand you herewith our check on Bank of Morgan City & Trust Co., for $250.00 which we will thank you to pass to the credit of our account.
"We would appreciate your sending an itemized statement; we have received only one, that of July 1st.
"Thanking you for your consideration, and with best wishes, we are,
"(Signed)   John Dalton Co., Ltd.
"J. M. Dalton."

Only one shipment, in amount $68, was received after this letter was written. We are satisfied from the evidence adduced that the account sued on, in the matter of tonnage and weights, is correct.

Defendant further testified that the prices charged were subject to rebate, but does not say to what amount. There is no complaint about prices charged in defendant's letter; no claim that there was a rebate due. Asked by plaintiff to produce some written evidence showing an agreement of the kind, defendant admitted that he could not produce any, claiming that same was due under a verbal agreement entered into between him and Mr. Simone.

The lower court did not believe that any such agreement had been established, and our conclusion is the same.

The district court has discussed the facts fully. We agree with him in his conclusions.

Judgment affirmed. Defendant and appellant to pay the costs in both courts.