On the Merits.
The record discloses that John B. Galloway, doing business as Mutual Insurance Agency, was the duly authorized agent of defendant at the City of Baton Rouge. In such capacity, he had the right to, and did, issue many policies of insurance, and he had the right to, and did, collect and receive the premiums due thereon in behalf of defendant.
Upon certificates by Galloway, doing business as Mutual Insurance Agency, that policies were issued, were in full force and effect and that the endorsement giving notice of financing agreement with plaintiff had been put on each copy of the policies involved, the plaintiff advanced funds for the payment of premiums, which said funds would be deposited to the credit of the said Galloway, and assignments of said policies obtained. Notice of such assignments were immediately given to the named assured and to the defendant, who- was also requested to acknowledge the notice of the assignment on a copy of the notice attached. In each instance, the defendant executed and returned to plaintiff the copy endorsed “Central Manufacturers Mutual Insurance Co. by O. A. Mayer”. It is not disputed that Mr. Mayer -had full authority to sign and acknowledge the receipt of the notice of assignment.
The record further shows that plaintiff financed some sixty to seventy contracts for the premiums on policies of defendant and experienced no difficulty in obtaining refunds (unearned premiums) whenever a policy was cancelled except with the four contracts which form the basis of this suit. Relative to those four contracts, the evidence shows that the procedure outlined above was fully adhered to and the funds derived therefrom were all deposited to the credit of Galloway. It was not until January 5, 1949, that defendant undertook to furnish a list of policies issued by Galloway to the plaintiff, and it is then that it was ascertained the four contested policies were not listed, presumably not having been issued by Galloway.
It is the contention of the defendant that the policies listed in the finance contracts in question are non-existent and defendant cannot therefore be held liable, while it is plaintiff's contention that under the facts of this case the defendant is now estopped to assert that these policies were not issued even if that be the fact.
In plaintiff’s brief, we find a resume of the law and good reasons to sustain plaintiff’s position, and we quote:
“The Restatement of the Law oif Agency prepared by the American Law Institute reads as follows:
“ ‘261. A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.
“ ‘Comment a.: Liability is based upon the fact that the agent’s position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.
“ ‘262. A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him, under the rule stated in #261, is not relieved from liability by the fact that the *672 apparent agent acts entirely for his own purposes, unless the other has notice of this.
“ ‘Comment a.: A person relying upon the appearance of agency knows that the apparent agent is not authorized to act except for the benefit of the principal. This is something, however, which he normally cannot ascertain and something therefore which it is rational to require the principal, rather than the other party, to risk.’
“See - also 29 American Jurisprudence, 634:
“ ‘833. In an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the fraud, misconduct or negligence of an agent of the company. If either party must suffer from an insurance agent’s' mistake, it must be tire insurance company, his principal.’
“Although the general rule is that ‘the attorney cannot go beyond the limits of the procuration’ (Article 3010 R.C.C.), it has -been decided long since that,
“ ‘he who accredits another by employing him, must abide by effects of that credit, and will be bound by contracts made with innocent third persons in the seeming course of that employment, and on the faith of that credit, whether the employer intended to authorize him or not, since where one or two innocent persons must suffer by the fraud of a third, he who enabled that third person to commit the fraud should be the sufferer’. Smith’s Mercantile Law, page 158, cited and applied in Honold v. Meyer, 36 La.Ann. 585, 589.
“Applying this just legal philosophy to an insurance case, Judge Janvier in Wuertz v. Life & Casualty Insurance Company of Tennessee, 1929, 10 La.App. 70, 120 So. 72, had this to say:
“ ‘Plaintiff sues for the return of $517.80 paid to defendant through Victor’- G. Fox, who, according to plaintiff, was an agent of defendant for the solicitation of insurance and for the receiving of premiums therqfor. The policy for which the amount mentioned was paid was never issued. Defendant refuses to return the money, claiming that Fox was not its agent and had neither actual nor apparent authority to receive payments for it. * * *
“ ‘That Fox originally was fully authorized to receive payments for defendant is conclusively shown by the fact that he was given printed application forms of receipt. The receipt for the first payment was on one of these and was signed by Fox. •as agent for the Company.
“ ‘Since the defendant put into Fox’s hands its printed receipts it cannot now be heard to say that Fox had no authority to issue those receipts. As between the Company and Fox, he may be liable to the Company for exceeding its actual -authority but as between the Company and the plaintiff the fact that it put into Fox’ hands documents which gave him apparent authority to receive payments for the Company is sufficient to render it liable for the return of such sums as were wrongfully collected.
“ ‘The premiums were paid to one apparently having authority to receive them, and it was the action of the Company which gave him this apparent authority.’
“Article 3010 of our Civil Code quoted in part above adds that even where the agent does a thing exceeding his power it may become binding upon the principal if he ratifies the action.
“ ‘An insurance company may be estop-ped by its conduct to deny the agency or authority of one purporting to act for it, and it may ratify the acts of such person and be found thereby.
“ ‘An insurance company will be estop-ped to deny that a certain person is its agent or possesses the authority he assumes to exercise, where it knowingly causes or permits him so to act as to justify a third person of ordinarily careful and prudent business habits to believe that he is the company’s agent or possesses the authority exercised. All the elements of estoppel, however, must be present; the insured must have been misled by the company, not by the agent, the authority must have been actually apparent to the one dealing with the agent, and he must have dealt with the agent in reliance on his apparent authority in good faith and in the exercise *673 of reasonable prudence.’ (44 C.J.S. [Insurance, § 147, p.] 810: Ratification and Estoppel.)
“All of the necessary elements of estop-pel are present. The acknowledgment of the notice by the company misled our Bank into believing that its security was valid. The company could not deny that its agent had more than apparent authority to issue a policy and certify to its existence and collect the premium therefor; the agent had actual authority to do so. No one could deny that the Bank’s notification of the assignment to the insurance company was the exercise of reasonable prudence. No one will dispute that our Bank acted in good faith.
“Another element essential to the plea of estoppel is that of injury. See French Market Ice Mfg. Co. of New Orleans, Limited, v. Dalton, 1930 [15 La.App. 115] (130 So. 122):
“ ‘The first and fundamental principle of the law on the subject of estoppel by matters in pais is that the language or conduct of the party estopped was acted on by the party urging the estoppel, and that the party, thereby so induced to act, will suffer injury if the other party is permitted to' controvert his act, or deny what he has held out to him to be true.’
“Certainly if the Bank had once been advised that it was relying upon nonexistent security, no further loans would have been made on policies of this company supposed to have been issued by this agent. Even with respect to the first of such fraudulent transactions, the Bank was injured by the improper action of the company. By analogy, see the following:
“ ‘If the depositor was guilty of negligence in not discovering and giving notice of the fraud of his clerk, then the bank was thereby prejudiced, because it was prevented from taking steps, by the arrest of the criminal, or by an attachment of his property or other form of proceeding to compel restitution. It is not necessary that it should be made to appear by evidence that benefit would certainly have accrued to. the. bank from an attempt to secure payment from the criminal. * * * As the right to seek and compel restoration from the person committing the forgeries was, in itself, a valuable one, it is sufficient if it appears that the bank by reason of the negligence of the depositor, was prevented from'promptly, and it may'be effectually, exercising it.’ Leather Mfg’rs’ Banks v. Morgan, 117 U.S. 108, 6 S.Ct. 657, 29 L. Ed. 811; cited and applied in The Wilson Sewing Machine Company v. Southern Express Company, 42 La.Ann. 593, 7 So. 710.
“After acknowledgment of notice by the company, any subsequent silence with respect thereto meant nothing if it did not mean that the company was willing to have our bank believe that it actually-had the security described in the contracts.
“ ‘It is well settled that, when a person has done or said something with intent to influence the dealings of another, and the other has acted upon the faith of it, the former ought, not to be permitted to change it to the injury of the latter.’ (Bradford-Kennedy Co. v. Brown, 152 La. 29, 38, 92 So. 723.)”
The defendant relies on the case of First Trust & Deposit Company v. Middlessex Mutual Fire Insurance Co., 259 App.Div. 80, 18 N.Y.S.2d 936, a decision of the Supreme Court, Appellate Division, Fourth Department of New York, one of the Appellate Courts of New York, but not the Court of last resort, wherein it was held that an insurance company was not liable for return premiums on the cancelation of fictitious policies fraudulently executed by its agents where such agent was clothed with authority to issue said policies. In our opinion, that case is inapposite to the case at bar, in that, in that case, the plaintiff, in making the loans in question on fictitious papers, at all times dealt directly with the insurance agent and never with the insured, and never directly with the insurance company, while in the case at bar, the plaintiff promptly notified the defendant of each transaction and not only notified the defendant of the loan and assignment, but requested- and obtained acknowledgment in writing by said defendant of the receipt of the notice of assignment. However, admitting for the mere sake of argument, *674 that the case be analogous to the case at bar, then we choose not to follow it in that our case should be decided in accordance with our law and not that of New York.
We are therefore of the opinion that defendant is estopped from denying that the policies were in fact issued. Such was the conclusion of the trial judge.
For these reasons, the judgment appealed from is affirmed.