ELLIS, Judge.
The plaintiff has filed this suit against Kent Piling Co., Inc., alleging that on June 20, 1952, while employed by defendant to do strenuous, heavy work consisting of sawing and cutting logs, operating a “logger’s dream” and while removing stumps, he attempted to disengage a part of the “logger’s dream” referred to as the “heel,” the catch of which had been broken, that his left forearm and hand were caught in the- machine causing severe injuries and fractures. Pie prayed for compensation in the amount of $26.33 not to exceed 400 weeks for total and permanent disability with interest at the rate of 5% on each past due payment from its due date until paid, subject to a credit for any compensation that may have been previously paid.
The main defense offered by answer and in the District Court was a denial that the plaintiff was employed by the defendant company on the date of the accident but, in truth and in fact, was employed by the K & H Stock Farm, a partnership composed of Charles R. Kent and his brothei-in-law, Thomas J. Hood.
The case was tried and the District Judge with written reasons dismissed plain *140 tiff’s suit on the ground that the latter had failed to prove that he was an employee of the defendant Kent Piling Company, Inc., and from this judgment plaintiff has appealed.
. Plaintiff contends on appeal, ¡first, that the judgment .of the District Court was manifestly erroneous in that the record shows that plaintiff on the date of his injury was employed by Kent Piling Company, Inc., and, in the alternative, if, in truth and in fact, plaintiff was not performing service for the defendant at the time of the accident, then under the facts in this particular case he falls in the category of a-borrowed employee, under the principle set forth in Malone’s Louisiana Workmen’s Compensation Law and Practice, under Section 57 dealing with borrowed employees wherein it is stated:
“A lending arrangement is in effect a three party agreement. This means that not only must there be an understanding between lender and borrower, hut the employee, as well, must have consented to the change of masters. For example, a construction laborer was ordered by the company employing him to perform work on the private property - of one of the company’s officers under an arrangement whereby the company continued to be responsible for his wages, but was to be reimbursed by the officer. This was ■without the knowledge of the employee, who reasonably believed that he was doing company work subject to its orders. Under these circumstances the company was not allowed to deny that the claimant, who was injured during this assignment, was its employee.”
It is shown that plaintiff was injured on June 20, -1952 as alleged in his petition; that at the time Charles R. Kent was operating the “logger’s dream” on the property belonging to himself and his brother-in-law, Tom Hood, and as the plaintiff attempted to disengage the “heel” on the “logger’s dream” his arm and hand were caught and apparently crushed so as to fracture bones in both. On the date the accident happened Mr. Hood was also present. Plaintiff was taken to the Charity Hospital at Independence where he remained approximately three months and then to Charity Hospital in New Orleans for an additional three months. He was paid $39 every two weeks by Kent Piling Company, Inc., until July 14, 1953. This suit was filed on July 14, 1954. Answer was filed on September 4, 1954 and on September 14, 1954 on motion of plaintiff’s counsel the payroll records of Kent Piling Company, Inc., for April, May and June, 1952, were secured as well as the social security and income tax withholding records of the plaintiff for March 15, 29, April 12, and 26. Counsel for plaintiff had asked for these records for April, May and June, however, the defendant produced the records as above described, denying any employment of the plaintiff during May and June. In fact, the defendants deny any employment of the plaintiff after April 19, 1952.
Counsel for plaintiff also on ¡September 14, 1954 under LSA-R.S. 13:3781 propounded interrogatories in which he asked if the plaintiff was not employed by Kent Piling Company, Inc., during April, May and June of 1952, then who were his employers during those months and particularly June 20, 1952, the date of the accident. On September 21st the interrogatories were answered and therein it was stated that the plaintiff was employed by Chas. R. Kent and Thomas J. Hood on their cattle ranch in June 1952, and that he was paid by them out of funds owned by them on deposit with Kent Piling .'Company, Inc.
On the trial of the case it was shown that Charles R. Kent on the date of the accident was also the woods superintendent for the Kent Piling Company, Inc., as well as secretary of Kent Mercantile Company. The latter two companies, while composed of some members of the Kent family, were separate and distinct corporations.
Plaintiff stated that he had been working for Kent Piling Company, Inc., off and *141 on for about six years; that Charles R. Kent was his boss and that he worked interchangeably for the defendant company and on the K & H Stock Farm -according to instructions from Charles Kent, that on June 20," 1952, Charles Kent had sent him to the farm and he was engaged in moving some stumps, apparently with the “logger’s dream” when he was hurt as above .described.. He further stated that he had been working on this farm about three days and that prior to that time he had been working in the woods at his regular job of sawing logs for Kent Piling Company. It was his positive testimony that he was moved back and forth from sawing logs in the woods to the K & H Stock Farm, but that all this time he received the same rate of pay from the Kent Piling Company and that as far as he knew and believed he was always working for the defendant company. It is definitely proven that the Kent Piling Company, Inc., paid its employees every two weeks in' cash which had been placed in an envelope, although the record shows the various witnesses, including the President of Kent Piling Company, Mr. Tom Kent, referred to the payment of wages by check.
Plaintiff testified that he was unable to do any other work than trying to help his mother with her pulp wood truck. He stated that he could only drive the truck, that he could not pick up any pulp wood nor saw any logs.
By consent a report of an examination by Dr. Irvin Cahen of New Orleans was placed in the record and it was his opinion that plaintiff’s hand was useless for excessive physical activity, and that his condition was permanent in type.
Under cross-examination plaintiff admitted that he was “tonging” the “logger’s dream” while Charles R. Kent operated it, and that they were clearing up the stumps on the K & H Stock Farm. According to plaintiff’s testimony he continually worked for the Kent Piling Company up to the date of his injury. Plaintiff states, however, that at times during his employment with the defendant company Charles R. Kent would take him to work on the K & H Stock Farm but that he considered he !was still ■ workihg for the company, mainly because' Charles Kent was the woods superintendent for the company and he testified that there "was no difference in his pay for the days he worked at the farm in that he was paid by Kent Piling Company in cash every two weeks.
Plaintiff offered the testimony of Wash Qiandler, Monroe Brumfield, , Monroe Booty, all fellow employees, who testified that on June 20,, 1952 they were employed by Kent Piling Company, Inc., that they had worked with Richard Banks in the woods and on the farm; and they all stated that on the day of Bank’s accident he was working on the farm whereas they were in the woods; they further testified that they at times worked on the farm for two or three .days and then back to the woods; they got such orders from Charles Kent, foreman of Kent Piling Company, Inc. These witnesses stated that they were paid every two weeks and, there was no difference in the way they were paid whether they worked in the woods or on the farm; that it came through the Kent Piling 1 Company office. Chandler testified that Banks had worked in the woods with the other employees within a week prior to the accident. Monroe Booty testified also that Banks had worked in the woods with him not more than four days prior to his injury. This witness testified that he had helped cut the timber for the Kent Piling Company off the land of the K & H Stock Farm, and that he had gone back once in a while to burn stumps and brush. This witness positively stated1 that Banks had worked in the woods for Kent Piling Company sawing logs for ten days before he was injured; that he knew it because he rode with him on the labor truck every morning. It was also stipulated that John Fultz, Charles Dillon, Ike Downing and Willie Taylor would testify substantially the same as Chandler, Booty and Brumfield.
The defendant company offered Mr. T. W. Kent, its President, as a witness. When he attempted to testify as to the pay roll sheets filed in response to plaintiff’s re *142 quest, an objection was made on the ground that such testimony was inadmissible unless he could testify as to his own personal knowledge or unless he prepared the records. He stated that the office manager made the records but that he saw them every day and they were under his control, whereupon his testimony was admitted. Counsel made further objection to the introduction of these records when they were offered at the end of the trial, however, the witnesses were examined and cross-examined with regard to these records without any reservation and, in addition, there is testimony independent of these records to prove the same thing shown by the records. In other words, the records show that plaintiff, Richard Banks, did not work for the Kent Piling Company, Inc., after April 19, 1952. This fact was also independently testified to by T. W. Kent and Charles Kent. T. W. Kent and his son, Charles Kent, both testified that the plaintiff laid off or quit after being paid on Saturday, April 19, 1952. T. W. Kent testified with regard to the main part of the transaction as follows:
“Q. Did the Kent Piling Company ever pay Richard Banks after his injury and in what capacity did the Kent Piling Company pay him? A. They never did pay him anything. They didn’t pay him anything for the Kent Piling Company, they paid him for the K & H Stock Farm.
“Q. Will you explain that? A. Well, the — when Banks got hurt he was working on the K & H Stock Farm and Mr. Charlie Kent, who is looking after it or has charge of it, he and Mr. Tom Hood got together and said they would go ahead and pay him the same wages until he got to where he could go back to work, they asked us to advance as usual, the same thing he was making until he was able to go back to work.
“Q. The Stock Farm has an account with the Kent Piling Company, is that correct? A. That’s correct, and they generally give us timber or calves. They have a stock farm and we take beef and handle it through the market and give them credit for it to pay the items we pay for them.
“Q. You paid those payments out of the K & H Stock Farm income ? A. Yes.
“Q. And paid it in checks to Richard Banks? A. Yes, in checks each two weeks.
“Q. It is your testimony that it was not in anyway connected with the Kent Piling Company payroll? A. Not in any way, shape or form.”
Ji<****♦
“Q. Then why was he paid — explain why he was paid by Kent Piling Company checks after his injury? A. I guess to — as we had been paying all of their payroll items. Kent Piling Company finances the operation. They write a note to the office, they reimburse us by the sale of these things from the farm, stock and cattle.
“Q. Then why was this amount paid out to Richard Banks after his injury? A. On their request. They figured he would need it to live on. He was going to the hospital and that he would need it to live on while taking these trips, they asked us to pay the $3.25 a day and we paid him every two weeks $39.00, six days a week. We gave him the check. I didn’t know at the time that they were going to pay him as long as they did, but they asked me to do that.
“Q. You paid him the full amount that had been paid him before he got injured? A. Yes, his wages went on.
“Q. At the instruction of K & H Stock Farm? A. Yes, the checks were charged to their account.”
T. W. Kent’s testimony is also corroborated by the record of payments of Social Security.
*143 If this record is not correct it would have been a very simple matter for counsel to have checked it. Hood and Charles Kent both stated that they had no farm records other than the record of the orders that they would give their employees to the Kent Mercantile Company or the records of the Kent Piling Company showing what money had been paid for their account. Charles Kent also testified that the employees who testified for the plaintiff had worked on the farm property when they cut timber for Kent Piling Company, Inc., and also that on some Saturdays and Sundays he had as many as five or six working on the farm, and that on some days when there was no work to be done for Kent Piling Company some of the employees worked for the farm.
Charles Kent testified that the plaintiff had been working for the K & H Stock Farm for approximately three weeks prior to his injury and he had paid him every Saturday by a written order to the store, meaning the Kent Mercantile Store. In other words, he gave plaintiff an order for his wages which he would take to the Kent Mercantile Store and they would pay him in cash and charge it to the K & H Stock Farm. In corroboration of this testimony there was introduced a debit slip of the R. A. Kent Mercantile Co. Inc., dated June 7, 19S2 charging to the account of K & H Stock Farm for Richard Banks, $30, which shows an “O.K.” by Charles Kent. On June 14, 1952, we find another charge to the account of K & H Stock Farm by R. A. Kent Mercantile, Co. Inc., for Richard Banks, in the sum of $30, and one for Clarence McKay in the strm of $22, on which Richard Banks apparently made his mark and Clarence McKay signed. This debit account was given by phone by “Fanny Lou K.” who is the wife of Charles Kent. On June 23, 1952, or three days subsequent to the date of plaintiff’s accident, we find another debit account to the K & H Stock Farm made by R. A. Kent Mercantile Co. Inc. with the name “Richard Banks” in the amount of $20, and underneath that is the name “Ruth Lean Banks.” The testimony shows that the latter is the wife of Richard Banks who got his money after he was hurt.
It would appear that the District Judge was not manifestly erroneous when he found that Richard Banks was not employed by Kent Piling Company, Inc., on the date of the accident and injury, nor had he been so employed since April 19, 1952. It must be remembered that Banks testified that he was always paid by Kent Piling Company in the same manner, whether he worked on the farm or in the woods. The testimony of Charles Kent and these debit slips as well as the testimony of the manager of the R. A. Kent Mercantile Co. Inc., who identified the slips, flatly contradicts the payment of wages to Richard Banks from June 7, 1952 through June 20, 1952. also, the payment of June 7, 1952 was made for a week’s work prior to the pay day. As found by the District Judge and with which we find no manifest error, Richard Banks did not work for Kent Piling Company subsequent to April 19, 1952 and he was definitely, according to the testimony, employed by K & H Stock Farm beginning the first week in June and paid by the Stock Farm in the manner heretofore shown. Under these facts he was neither an employee of Kent Piling Company nor a “borrowed employee” as contended in the alternative by counsel for plaintiff. Whereas the record may not be entirely satisfactory as to why Kent Piling Co. paid the plaintiff $39 every two weeks subsequent to his accident and injury in that no account was offered showing a credit for timber and beef sold to Kent Piling Company and the Kent Mercantile Company, nor any account showing the charge to the Stock Farm of the $39 paid to the plaintiff every two weeks after his injury until June 14, 1953, it is also true that the explanation given by T. W. Kent and Charles R. Kent as well as their testimony on the subject is uncontradicted. While this record as presently made up apparently shows a serious injury and disability to the plaintiff, the latter has failed to prove that the defendant, Kent Piling Company, Inc., was his employer on the date of the accident and injury.
*144 Counsel for plaintiff in his brief presents another argument based upon estoppel, viz.:
“There is one other argument plaintiff desires to urge. If this Honorable Court finds that in truth and in fact there had been a change of employment and that at the time of The accident plaintiff was the employee of the K & H Stock Farm and not of the defendant, it is respectfully, urged that because of the peculiar circumstances of this case, defendant is estopped from denying that it was the employer of the plaintiff in this suit.”
sfc :}« ^
“Plaintiff respectfully urges the Court to find that upon considering the case in the light, most favorable to the defendant, there must be judgment rendered herein in favor of plaintiff as prayed for and that defendant should be estopped from denying that it was the employer; because of its action it led petitioner to believe that there was no question but that it was his employer, and that it was reasonable for petitioner to assume under the circumstances that defendant was his employer, which in truth and in fact he did believe.”
There is no question but that the plaintiff was an employee of the defendant company for a number of years, that his name was carried on its payroll records, and according to a preponderance of the testimony of fellow employees as well as that of plaintiff himself, the defendant company’s employees, including plaintiff, had been used on the K & H Stock Farm project prior to the termination of plaintiff’s employment with the defendant company and his reemployment by the E & FI Stock Farm. Also, plaintiff was working under the supervision and instruction of Mr. Charles Kent, who was his boss while employed by the defendant company, and who was also a partner in the K & H Stock Farm, the other member of this partnership being T. J. Hood, a brother-in-law of Charles Kent and a son-in-law of the President of the defendant company,' and following the accident plaintiff was paid compensation in the amount of $39 every two’weeks by the defendant company under an arrangement or agreement, of which the plaintiff had no knowledge, between the defendant company and the K & H Stock Farm. The defendant company attempted to deny that these payments made each two weeks were compensation, however, the written debit slips of the Kent Mercantile Company offered on behalf of the defendant company show that the plaintiff was paid $30 per week under orders of Charles Kent on behalf of K & H Stock Farm and was receiving this amount at the date of his injury, and 65% of $30 would be $19.50 per' week or $39 every two weeks. There is some testimony on behalf of the defendant company that the $39 was wages at the rate of $3.25 per day for six days, but this testimony cannot be accepted in the face of the positive testimony introduced on behalf of the defend-aiit company that the plaintiff was receiving $30 per week from the K & H Stock' Farm, payable on the latter’s order by the Kent Mercantile Company. In other words, instead of the plaintiff making $3.-25 a day with the K & H Stock Farm he was being paid $5 per day for a six day week. In addition, there is no question but that this man was totally disabled during the time that he was being paid the $39 every two weeks and was performing no labor or services whatsoever for the defendant company or the K & H Stock Farm, and under the jurisprudence such payments would be considered as compensation.
Thus, under the facts in the case the actions of the defendant company might be construed as an equitable estoppel in the event the plaintiff has lost, his rights against the K & FI Stock Farm. One who by words or actions intentionally or carelessly induces another to do or admit an act to his detriment which he would not otherwise have done or admitted, is bound by the apparent state of facts which he held out. Marsh v. Smith, 5 Rob. 518; Brian v. Bonvillain, 111 La. 441, 35 So. 632; Bradford-Kennedy Co. v. Brown, 152 La. 29, 92 So. 723; E. C. Taylor Co. v. New York *145 & Cuba Mail S. S. Co., 159 La. 381, 105 So. 379; United States Fidelity & Guaranty Co. v. Putfark, 180 La. 893, 158 So. 9; Swain v. Louisiana Light & Power Co., 13 La.App. 515, 128 So. 538; French Market Ice Mfg. Co. of New Orleans v. Dalton, 15 La.App. 115, 130 So. 122; Tyler v. Walt, 184 La. 659, 167 So. 182; State ex rel. Porterie v. Gulf, Mobile & N. R. Co., 191 La. 163, 184 So. 711; Brock v. Black, Rogers & Co., 201 La. 1017, 10 So.2d 790; Taylor v. Turner, La.App., 45 So.2d 107.
While it is true that ordinarily es-toppel must be specially pleaded before it can be considered, it is well settled that a plaintiff does not have to plead estoppel where the defendant’s contention was first raised in their answer. Our . Supreme Court in Sanders De Hart v. Continental Land & Fur Co., 205 La. 569, 17 So.2d 827, 833, in considering an estoppel as applicable to the defendants stated:
“The defendants cannot now change their position to the detriment of the other DeHart heirs by claiming the other DeHart heirs have not accepted the successions. They are now es-topped from advancing this contention. Estoppel was not pleaded by the plain-tiffs, but there was no need for the plaintiffs to interpose such a plea for the reason that the defendants’ contention was first raised in their answer. The answer of the defendants was open to every objection of law or fact as if specially pleaded, as replication is not allowed under our law. Keystone Life Ins. Co. of Louisville v. Von Schlemmer, 122 La. 280, 47 So. 606; City of Shreveport v. Chatwin, 139 La. 531, 71 So. 791; Town of Thibodaux v. Stark, 142 La. 375, 76 So. 806.”
Also see Hartsfield v. Green, La.App., 62 So.2d 180.
Thus, in the present case it was not necessary for plaintiff to plead estoppel as-the defendant’s contention (that no employer-employee relationship existed) was first raised in its answer and the latter was open to every objection of law or fact, meaning that the defendant’s answer in this case was open to a plea of equitable estoppel without the necessity of having specially pleaded same.
As above stated, if the plaintiff has been deprived of his right of action against the K & H Stock Farm under the special facts in this case, his objection to a dismissal of the suit against the defendant company on the ground that the latter is equitably estopped might be valid. We can not express an' opinion as the K & H Stock Farm is not a party to this suit. Presumably, 'had or should the K & H Stock Farm been sued, the members of same would plead prescription which would be governed by the principles enunciated in Callender v. Marks, 185 La. 948, 171 So. 86; Harris v. Traders & General Ins. Co., 200 La. 445, 8 So.2d 289; Jackson v. American Employers Ins. Co., 202 La. 23, 11 So.2d 225; Lunkin v. Triangle Farms, 208 La. 538, 23 So.2d 209; Davis v. Lewis & Lewis, 226 La. 1059, 78 So.2d 173.
Were: this not a compensation suit, a failure to have sought1 relief in the alternative against the K & H Stock Farm would result in a dismissal with prejudice of plaintiff’s suit, however, as this is a compensation suit and there is no question of the plaintiff’s accident, injury and disability (although we expressly reserve opinion as to their extent and duration) it is clear that if plaintiff is entitled to recover additional compensation it must come from his true employer, K & H Stock .Farm, unless the latter have been relieved of liability by virtue of prescription flowing directly from plaintiff’s having filed suit against the defendant company instead of the K & H Stock Farm, in which event plaintiff’s contention that the defendant company is equitably estopped from denying the relationship of employer-employee would and should be decided.
The next question that arises is wheth-er this Court should dismiss the plaintiff’s suit without prejudice to its plea of equitable estoppel' in the event his rights have been lost against the K & H Stock Farm by virtue of prescription directly the re- *146 suit of having’ filed suit against the defendant company by virtue of the special facts which plaintiff claims led him to believe that the defendant company was his employer rather than the K & H Stock Farm, as a result of which suit was filed against the defendant company, or whether judgment should be rendered ordering the case remanded to the District Court for the purpose of making as parties to this suit in the alternative the K & H Stock Farm partnership composed of Charles Kent and T. J. Hood, in order that the plaintiff in this compensation suit might not be deprived of his rights under the law governing the theory of equitable estoppel advanced by his counsel and which cannot be decided unless and until this court can decide that the K & H Stock Farm is relieved of liability by virtue of plaintiff having been misled by the acts of the defendant company into believing the latter was his real employer. If the K & H Stock farm can still be held to respond to a suit by plaintiff and judgment could be rendered against the K & H Stock Farm should the facts justify it, then plaintiff could not obtain a judgment against the defendant company upon the theory of equitable estop-pel. In view of the fact that this is a compensation suit in which the court shall not be bound by technical rules of evidence or procedure, LSA-R.S. 23:1317; Wallace v. Remington Rand, La., 86 So.2d 522, we have decided to remand the case to the District Court for the purpose of alternatively making parties to this suit the members of the partnership composing the K & H Stock Farm, rather than to dismiss plaintiff’s suit without prejudice to his plea of equitable estoppel.
It is therefore ordered, adjudged and decreed that this case be remanded to the District Court and that within thirty days from the finality of this judgment the plaintiff alternatively institute suit and make parties thereto the partnership known as K & H Stock Farm, and it is further ordered that plaintiff’s rights under the plea of equitable estoppel as against the defendant company be reserved and to await the outcome of his suit against the K & H Stock Farm. It is further ordered, adjudged and decreed that upon plaintiff’s failure to file suit within thirty days from the finality of this decree his suit against the defendant company herein is to be dismissed at his cost.